# STATE DEPARTMENT OF HIGHWAYS v. ROGER LAWRENCE NORMANDIN.

169 N. W. (2d) 222.

June 20, 1969—No. 41495.

*Douglas M. Head,* Attorney General, *Norman R. Carpenter,* Chief Deputy Attorney General, and *Charles R. Hall* and *John R. Murphy,* Special Assistant Attorneys General, for appellant.

*Beugen & Winick* and *Robert J. Beugen,* for respondent.

SHERAN, JUSTICE.

Appeal from an order of the Hennepin County Municipal Court rescinding an order of the commissioner of highways which directed revocation of defendant's driver's license.

On November 13, 1967, defendant, Roger Lawrence Normandin, was arrested by Sgt. Robert Anderson of the Hopkins Police

Department under circumstances in which the police officer had reasonable and probable grounds to believe that Normandin was operating a motor vehicle while under the influence of an alcoholic beverage. Normandin refused the police officer's request that he submit to a chemical test of his blood or urine for the purpose of determining alcoholic content. Revocation proceedings were instituted by the commissioner of highways pursuant to Minn. St. 169.123, subd. 5. After a hearing before the Municipal Court of Hennepin County pursuant to § 169.123, subd. 6, that court ordered that the revocation be rescinded and the state appeals.

### STATE'S RIGHT TO APPEAL

■ The first issue to be decided by us is whether the state can appeal from an adverse determination in the municipal court in a proceeding pursuant to § 169.123. We hold that it can.

Under § 169.123, subd. 7, a right of appeal from municipal court to the district court is given the licensee. No comparable provision is made for appeal by the state.[1] However, the state has a right of appeal under other statutory provisions.

Minn. St. 488A.01(11) provides:

"All causes civil and criminal shall be removed from the municipal court to the supreme court of the state of Minnesota in the same manner, upon like proceedings and with like effect as from district courts."[2]

---

[1] Minn. St. 169.123, subd. 7, provides: "If the revocation or denial is sustained, the person whose license or permit to drive * * * has been revoked or denied, may within 20 days after notice of the determination by the commissioner of highways file a petition for a hearing of the matter in the district court in the county where the hearing pursuant to subdivision 6 was held * * *. The matter shall be heard de novo with a right of trial by jury."

[2] See, Amdahl, A Sketch of the Minneapolis Municipal Court, The Bench and Bar of Minnesota, Vol. 19, No. 12, December 1962, pp. 21, 22: "Appeals in civil matters must be taken to the Supreme Court * * *."

Minn. St. 605.01 provides:

"A judgment or order of the district court in a civil action may be reviewed by the supreme court by appeal of a party as provided in this chapter."

Rule 103.03, Rules of Civil Appellate Procedure, provides in part:

"An appeal may be taken to the Supreme Court:

\* \* \* \* \*

"(d) From an order involving the merits of the action or some part thereof;

\* \* \* \* \*

"(h) Except as otherwise provided by statute; from the final order or judgment affecting a substantial right made in a special proceeding \* \* \*."

These provisions are adequate to give the state a right to appeal in this case.

The license revocation proceeding is not a criminal matter. It is "an opportunity afforded the petitioner, by law, to be heard on the question of whether or not he was entitled to a continuation of the privilege of operating a motor vehicle upon the public highway." Matter of Combes v. Kelly, 2 Misc. (2d) 491, 495, 152 N. Y. S. (2d) 934, 938. Such a proceeding is civil in nature. August v. Department of Motor Vehicles, 264 Cal. App. (2d) 52, 70 Cal. Rptr. 172; Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N. W. (2d) 75, 88 A. L. R. (2d) 1055. Cf. State ex rel. Vanouse v. Henry, 278 Minn. 344, 154 N. W. (2d) 503. Suspension or revocation of a license is not a punishment but is rather an exercise of the police power for the protection of the public. Anderson v. Commissioner of Highways, 267 Minn. 308, 126 N. W. (2d) 778, 3 A. L. R. (3d) 746. The language of § 169.123, subd. 6, stating that "[t]he hearing shall \* \* \* proceed as in a criminal matter" merely directs that the court in the trial of this kind of a civil proceeding should follow the procedures used in criminal cases. If the proceeding were criminal in essence, there would be no necessity for this language.

## EFFECT OF INTOXICATION

■ The second issue for decision is whether defendant was incapable of refusing to submit to chemical tests because of his extreme intoxication. We hold that he was not.

The legislature never intended the "implied consent" statute to excuse one so intoxicated as to be incapable of refusing to submit to chemical tests. This construction would lead to an absurd result—the greater the degree of intoxication of an automobile driver, the less the degree of his accountability under § 169.123.

In State v. Welch, 21 Minn. 22, 28, this court said, "A drunken man, equally with a sober man, is presumed to know and intend the acts which he does * * *."

The implied-consent statute does not set out any specific intent requirement. It simply provides:

"If a person under arrest refuses to permit chemical testing, none shall be given, but the commissioner of highways * * * shall revoke his license or permit to drive * * *." § 169.123, subd. 4.

The California appellate court considered the problem we now face in Bush v. Bright, 264 Cal. App. (2d) 788, 71 Cal. Rptr. 123. In that case, the driver refused to submit to a chemical test after his arrest for driving while under the influence. At the administrator's hearing, he contended that he was so drunk he did not have the mental ability to know what he was doing, if it was a fact that he had refused to submit to a test, and that he should not be denied his license because of such a refusal. The evidence was that the motorist had consumed twelve Scotches at a party, each drink larger than that he would get at a bar, and that he had more to drink at another party to which he went later. The appellate court upheld the suspension ordered by the administrator, reversing the superior court's holding. The court stated (264 Cal. App. [2d] 793, 71 Cal. Rptr. 126):

"It seems reasonable to us that an automobile driver should

be held accountable for his act of refusing a test under section 13353 while in a state of voluntary intoxication."

We agree with the reasoning of the California appellate court and hold that where the requirements of § 169.123 are otherwise met, a driver of an automobile who refuses to take the required chemical tests is subject to the license suspension provisions of that section, regardless of the degree of his voluntary intoxication or lack of understanding resulting therefrom.

Reversed.