286 So.2d 723 (1973)
Alvin D. KAUFMAN
v.
STATE of Louisiana, Through DEPARTMENT OF PUBLIC SAFETY, DRIVERS' LICENSE DIVISION.
No. 9511.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
Rehearing Denied December 21, 1973.
Writ Refused February 8, 1974.
*724 Teddy W. Airhart, Jr., Baton Rouge, for appellant.
Jodie W. Stout, Baton Rouge, for Public Safety of La.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
BLANCHE, Judge.
Plaintiff, Alvin D. Kaufman, was arrested for driving while under the influence of alcoholic beverages and was taken to the headquarters of Troop "A" of the Louisiana State Police where he was asked by the arresting officer to submit to a test for the purpose of determining the alcoholic content of his blood. When he refused, he was advised that his refusal would result in the suspension of his driving privileges for a period of six months. Thereafter, he was notified by the Department of Public Safety that his privilege to drive an automobile on the highways of the state had been withdrawn for a period of six months for the reason that he had refused to take the test which had been offered him. The plaintiff requested an administrative hearing regarding this determination. At that hearing the administrative officer conducting the same was of the opinion that the plaintiff had, indeed, refused the test and recommended that the suspension be affirmed.
From this ruling the plaintiff sought judicial review in the Nineteenth Judicial District Court. He also caused a rule to issue to the Department to show cause why a preliminary injunction should not issue prohibiting the Department from suspending his license. After a trial of the rule, the trial judge vacated and set aside the rule for a preliminary injunction and ordered that the plaintiff's driver's license be surrendered for a period of six months to the Department of Public Safety. From this judgment the plaintiff has appealed. We affirm.
The plaintiff admits that he was driving while intoxicated and pled guilty to the charge of driving while intoxicated in the District Court. The District Judge did not suspend his license to drive.
The statutory authority under which plaintiff's license was suspended by the Department of Public Safety is found in LSA-R.S. 32:661 et seq. It has been referred to as the Implied Consent Law and *725 its primary purpose is to deal with drunken drivers on the highways. It provides in effect that as a condition of the privilege to drive a motor vehicle upon the public highways of this state the driver is deemed to have given his consent to a chemical test (or test of his blood, breath, urine or other bodily substance) for the purpose of determining the alcoholic content of his blood, if he is arrested for any offense arising out of acts alleged to have been committed while such person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages.
The idea behind the statute is to afford an answer to the problem posed by the drunken driver who refused to submit to such a test which the courts had come to accept as competent objective evidence of the state of intoxication of those persons brought before them on charges of driving while under the influence of intoxicating beverages. Without fear of speculation, we can say that it has become common knowledge both within the bench and the bar of the reliance which the courts place on such tests. Therefore, to counter the refusal of drivers to take the test, the statute provides that when a subject is so charged he may refuse to submit to the test and no test will be given, but as a consequence of that refusal, he will then forfeit his privilege to drive within the State of Louisiana for a period of six months.
Plaintiff defends his refusal for failing to submit to an intoximeter test on the grounds that he was so intoxicated that he was unable to knowingly refuse to take the test. Assuming arguendo that plaintiff's state of sobriety was as alleged, we hold, as did the trial judge, that voluntary intoxication to such a degree as to deprive a driver of the capacity to knowingly refuse the test is not a defense to the action for revocation of his license. Nowhere can we find in the statute any provision which indicates that a person subject to its provisions must knowingly refuse to take the test. We think that the contrary is indicated. R.S. 32:661(A) states that any person operating a vehicle on the public highways of the state is deemed to have given his consent to such a test. Immediately following this provision is paragraph (B) of that same section, which provides:
"Any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by Subsection (A) of this section * * *." (Emphasis supplied)
Thus, if the test may be performed on a person subject to the statute whose condition is such as to render him incapable of refusal, we would be hard pressed to judicially interpret the statute so as to require that a person must knowingly refuse the test before the sanctions of the statute may be applied to him.
In addition, we should not construe a statute so as to defeat its purpose or to lead to absurd results. Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (1946). The object of the statute is the testing of intoxicated drivers on the highways. Understandably, it should be expected that those apprehended would be drivers in some state of intoxication and with varying degrees of mental impairment as a result thereof. Our adoption of plaintiff's argument would have the practical effect of construing the statute so as to place the burden on the arresting officer to determine the state of mind of the one to whom he sought to administer the test and, therefore, of delaying the test until the subject was sober enough to understand that it was being offered to him. Adopting plaintiff's argument would have the further effect of excusing the most dangerous class of drivers on the highway, i. e., those who are not too drunk to drive but too drunk to know what is going on around them.
Jurisdictions other than Louisiana have considered the same argument as advanced by counsel and rejected it. State of Washington, *726 Department of Motor Vehicles v. McElwain, 80 Wash.2d 624, 496 P.2d 963 (1972); Hoban v. Rice, 25 Ohio St.2d 111, 267 N.E.2d 311 (1971); State of Minnesota, Department of Highways v. Normandin, 284 Minn. 24, 169 N.W.2d 222 (1969). In the Normandin case, Normandin refused a request to submit to a chemical test and contended on appeal that he was incapable of refusing the test because of his extreme intoxication. The Court answered:
"The legislature never intended the `implied consent' statute to excuse one so intoxicated, as to be incapable of refusing to submit to the chemical tests. This construction would lead to an absurd resultthe greater the degree of intoxication of an automobile driver, the less the degree of his accountability * * *."
Our review of the record reveals that plaintiff was not so intoxicated that he did not have the mental capacity to discern that he was being offered the test and to knowingly refuse to submit to the same. On this question we refer to the testimony of Trooper Brunett, the arresting officer. He testified that his attention was directed to plaintiff because his left blinker light was flashing at a point in the highway at which it was impossible to make a left turn. He observed plaintiff driving half on and half off of the road and weaving in and out of both lanes of traffic. He also observed him attempting to pass a truck in such a manner that the truck had to drive off of the road in order to avoid a collision. Trooper Brunett stated that it took him over a mile to stop plaintiff, even though he had in full operation his siren and red light. He further explained the difficulties he experienced in trying to get Mr. Kaufman out of his automobile and stated than when plaintiff staggered out of the automobile he was unable to walk without assistance. He exhibited the usual symptoms of staggering when he attempted to walk, slurring his speech and exuding a strong odor of alcohol. He was then cuffed and placed in the patrol car where he appeared to lean his head back and go to sleep. The officer denied counsel for appellant's allegations that he had passed out while in the automobile. With regard to offering plaintiff the test, Trooper Brunett stated he sat plaintiff down at a table and explained what was involved in taking the test and the consequences for refusing to take the test. When counsel asked if plaintiff knew that the officer was asking him to take the test, he stated as follows:
"A While I was explaining the test to him Trooper Arbour was preparing the machine for the test. There was another person that had also been arrested for DWI. He was taking the test. Now, after his test was over, Trooper Arbour was clearing the machine and preparing it for the next test which would have been Mr. Kaufman. I was explaining it to him and asking him to take it. He refused. He said he didn't care about his license, he would just lose it. Several other people told him that. I have all these witnesses down here, the names of the people who also heard it. They told him I told him all I could tell him. I would just be repeating myself. I told him oh, an extra couple of times and I said, well he just doesn't want to take the test. Other people intervened. They asked him to take the test and they explained it to him that he was going to lose his license." (Testimony of Trooper Brunett, Record, pp. 27, 28)
With regard to the Trooper's testimony, the trial judge remarked as follows:
"* * * We're certainly impressed with the testimony of Trooper Brunett in this case. He was very forthright in his testimony. We construe his credibility to be exceptionally well taken. * * *" (Oral Reasons for Judgment, Record, p. 11)
*727 Later the trial judge remarked:
"* * * We think in this case the evidence shows that the test was offered; that he knowingly did refuse the test. * * *" (Oral Reasons for Judgment, Record, p. 12)
For the above and foregoing reasons, the judgment of the trial court is affirmed, at the cost of plaintiff-appellant.
Affirmed.