THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
BETTE SOLZAK, Defendant-Appellee.

First District (3rd Division)   No. 82—1724.

Opinion filed June 29, 1984.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and James F. Sullivan, Assistant State's Attorneys, of counsel), for the People.

Katz, Hirsch, Wise & Colky, Ltd., of Chicago, for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

On January 31, 1982, Bette Solzak was arrested for driving while under the influence of alcohol. At a hearing to determine whether her driver's license should be suspended, pursuant to Illinois' implied consent statute (Ill. Rev. Stat., 1982 Supp., ch. 95 1/2, par. 11—501.1), Ward Rhentgen, the arresting officer, testified that Solzak had refused his request that she submit to a chemical test to determine the alcohol content of her blood. Solzak testified that she did not remember anything. The trial court ruled that Solzak had not knowingly refused the request and, accordingly, there was no probable cause to suspend her driver's license. The People appeal. The issue presented for review is whether a refusal to take a chemical test for blood alcohol content by a person under arrest for driving while under the influence of alcohol must be knowing in order to be the basis for a suspension of the person's driver's license within the provisions of section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat., 1982 Supp., ch. 95 1/2, par. 11—501.1).

Officer Ward Rhentgen of the Northfield police department testified that on January 31, 1982, at about 1:56 p.m., he was notified of

an automobile accident at 300 Waukegan Road, Northfield. He arrived at that address to find Solzak seated behind the steering wheel of an automobile with the key in the ignition and the motor running. The car was on top of the remains of a Regional Transportation Authority wind shelter. He smelled a strong alcoholic odor on Solzak's breath. After an ambulance arrived and provided medical treatment, Officer Rhentgen informed Solzak that she was under arrest for driving under the influence of alcohol. He repeatedly asked her if she was all right. Solzak did not respond to the questions. She was speaking, not making any sense, and moving in a "combative" manner.

Solzak was transported by ambulance to Glenbrook Hospital emergency room. Officer Rhentgen arrived there at about 3:30 p.m. and again advised her that she was under arrest for driving under the influence of alcohol. He asked her to submit to a test to determine the alcohol content of her blood, adding that failure to so submit would cause a six-month suspension of her driver's license. Solzak replied, "Nobody's going to take any blood from me." At this time, Solzak appeared coherent, not hysterical, and not in any pain. She subsequently was taken to the Northfield police station, where she was cited for driving under the influence of alcohol and released on bond.

Solzak testified that she did not recall a conversation with Officer Rhentgen or anything else prior to being at the police station.

The trial court found that there was no probable cause to suspend Solzak's license because she did not knowingly refuse to submit to the blood test. This appeal followed.

The People contend that the trial court based its decision on the erroneous assumption that a refusal to take a blood test must be knowing, and, therefore, its judgment should be reversed. The applicable statute provides, in pertinent part, as follows:

"(a) Any person who drives *** a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol *** content of such person's blood if arrested [for driving while under the influence of alcohol]. ***

(b) Any person who is dead, unconscious or who is otherwise in a condition rendering such person incapable of refusal, shall be deemed *not* to have withdrawn the consent provided by *** this Section ***." (Emphasis added.) (Ill. Rev. Stat., 1982 Supp., ch. 95 ½, pars. 11—501.1(a), 11—501.1(b).)

This statute, which became effective on January 1, 1982, replaced an earlier statute which stated that any person who was unconscious or

otherwise incapable of refusal was deemed to have withdrawn the implied consent presumed by the statute. (Ill. Rev. Stat. 1979, ch. 95 ½, par. 11—501.1(e).) Refusal to submit to the test results in suspension of the individual's driver's license. Ill. Rev. Stat., 1982 Supp., ch. 95 ½, par. 11—501.1(c).

The question whether a refusal to take a chemical test for blood alcohol content must be knowingly made under the current implied consent statute has not, to our knowledge, been decided by a reviewing court in Illinois. Other jurisdictions which have considered this issue under identical statutes have determined that such a refusal need not be knowing to invoke suspension of the driver's license. In *Hoban v. Rice* (1971), 25 Ohio St. 2d 111, 267 N.E.2d 311, a motorist appealed the suspension of his driver's license, contending that since he did not remember anything, he did not refuse to take the test, because the refusal must be knowingly and intentionally made. The Supreme Court of Ohio refused to consider such a subjective standard as the state of mind of the motorist, since requiring a determination whether he understood his refusal would place an impossible burden on the arresting officer. In affirming the order suspending the license, the court stated:

> "Appellant's lack of recollection is not inconsistent with his refusal to take the sobriety test. It is possible for a licensee to be in such a state of intoxication that he does not understand what is happening, and, at the same time, by words, acts and general conduct to manifest an unwillingness or outright refusal to take the test. Although he may later have no memory of what occurred, his mere statement that he does not remember anything that happened is insufficient to show that he did not refuse to take the test.

> If we were to adopt appellant's theory, a licensee could refuse the test *** and then, at a *** hearing [on the suspension of his license], testify that he does not remember anything. The result could be to nullify the effect of the statute." 25 Ohio St. 2d 111, 117-18, 267 N.E.2d 311, 315-16.

In *State of Minnesota Department of Highways v. Normandin* (1969), 284 Minn. 24, 169 N.W.2d 222, the Supreme Court of Minnesota reversed a municipal court order which rescinded an order of the commissioner of highways which directed revocation of the driving license of an individual who refused to submit to a chemical test upon being arrested for driving under the influence of alcohol. The court concluded that a driver of an automobile who refuses to take the required chemical tests is subject to the suspension of his license re-

gardless of the degree of voluntary intoxication or lack of understanding resulting therefrom. The court also stated:

> "The legislature never intended the 'implied consent' statute to excuse one so intoxicated as to be incapable of refusing to submit to chemical tests. This construction would lead to an absurd result—the greater the degree of intoxication of an automobile driver, the less the degree of his accountability ***." 284 Minn. 24, 27, 169 N.W.2d 222, 224.

*Kaufman v. State of Louisiana Department of Public Safety* (La. App. 1973), 286 So. 2d 723, involved a motorist whose driver's license was suspended as a result of his refusal to submit to an intoximeter test. He appealed the suspension, defending his refusal on the ground that he was so intoxicated he was unable to knowingly refuse to take the test. The Court of Appeal of Louisiana held that voluntary intoxication to such a degree as to deprive a driver of the capacity to knowingly refuse the test is not a defense to the action for revocation of his license. The court stated:

> "Nowhere can we find in the statute any provision which indicates that a person subject to its provisions must knowingly refuse to take the test. We think that the contrary is indicated.
>
> * * *
>
> [I]f the test may be performed on a person subject to the statute whose condition is such as to render him incapable of refusal, we would be hard pressed to judicially interpret the statute so as to require that a person must knowingly refuse the test before the sanctions of the statute may be applied to him.
>
> * * *
>
> Adopting plaintiff's argument would have the *** effect of excusing the most dangerous class of drivers on the highway, i.e., those who are not too drunk to drive but too drunk to know what is going on around them." 286 So. 2d 723, 725.

In the instant case, Officer Rhentgen testified that at the hospital he asked Solzak to submit to a test to determine the alcohol content of her blood. She refused his request by stating: "Nobody's going to take any blood from me." Solzak testified that she did not remember any conversation with Officer Rhentgen prior to when she was at the police station. The trial court determined that her refusal was not, therefore, a knowing refusal. Based on this finding, the trial court decided that her license would not be suspended.

It is clear to us that the purpose of Illinois' implied consent statute is to make the streets and highways safer for its citizens by making prosecution of intoxicated drivers easier. Allowing an individual

who is too intoxicated to knowingly refuse a blood test to escape the deterrent and retributive effects of the statute would not serve to further that purpose. Furthermore, such a result would circumvent the plain meaning of the statute, which calls for suspension of one's driver's license upon refusing to take the blood test. Noticeably absent from the statute is any exception to the rule for lack of knowing refusal, and we will not create such an exception by judicial fiat. Therefore, we hold that refusal to take a chemical test by a person under arrest for driving while under the influence of alcohol, other drug, or combination thereof, need not be a knowing refusal to be the basis for a suspension of driving privileges within the provisions of Ill. Rev. Stat., 1982 Supp., ch. 95 ½, par. 11—501.1.

Solzak argues that the trial court determined that there was no response to the blood test request and that this was a finding of fact that there was no refusal. This finding, she contends, was not manifestly contrary to the evidence (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65) and, therefore, must be affirmed. The record indicates that the trial court found as follows:

> "*** I'm going to find that there was no knowing refusal ***.
>
> * * *
>
> This is the finding of fact. The evidence showed that the defendant was unable to respond to the police officer's question, 'How do you feel,' quote, unquote, which he asked at the scene, and that her condition remained in that state until after she was transported to the police station."

Contrary to Solzak's assertion, the trial court made no finding that she did not respond to the blood test request. Moreover, the trial court did not find that there was no refusal, but that there was no knowing refusal. As we have discussed, refusal to take a chemical test need not be knowing to serve as a basis for suspension of driving privileges under the implied consent statute.

Solzak contends that to penalize one incapable of consenting or objecting to a blood test request for reasons of incoherence, incapacity or unconsciousness would be absurd. As for incoherence, in our view, to allow one who is too intoxicated to understand the request to escape penalty would be absurd. Any person who has voluntarily become so intoxicated as to be incoherent and has then driven an automobile, thereby seriously jeopardizing the health and lives of other motorists and pedestrians, falls squarely within the purview of the implied consent statute.

Finally, Solzak argues that the implied consent statute was designed to allow the admission into evidence of blood test results when

that blood is drawn from physically incapacitated persons. Solzak asserts that she should not be penalized merely because Officer Rhentgen failed to proceed with a blood test, the results of which would have been admissible. Implicit in this argument is the notion that the arresting officer should disregard the refusal of a person to submit to a test requested by a law enforcement officer. On the contrary, section 11—501.1(c) provides that if a person under arrest refuses the test request, none shall be given. Ill. Rev. Stat., 1982 Supp., ch. 95 ½, par. 11—501.1(c).

For the foregoing reasons, the order of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

RIZZI, P.J., and McNAMARA, J., concur.