THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL T. CARLYLE, Defendant-Appellant.

Second District   No. 83—1124

Opinion filed January 23, 1985.

Mary Robinson, of Elgin, for appellant.

Theodore Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Following a hearing conducted pursuant to the Illinois implied-consent statute (Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 11—501.1), the trial court found the State had met its burden on the issues required to be proved under the implied-consent statute, and denied Michael T. Carlyle's request for a finding that he did not refuse to submit to a breathalyzer test.

Carlyle appeals from that decision, contending on appeal that the State failed to prove that he refused to submit to the breathalyzer test.

The parties entered into an agreed record of the proceedings below, signed by the trial judge, as a substitute for a verbatim transcript of the evidence at the hearing. See 87 Ill. 2d R. 323(c).

At the hearing, Wayne Wofford, a McHenry County deputy sheriff, testified that on November 4, 1982, at 8:04 p.m. he observed a brown Subaru, later determined to be driven by Michael T. Carlyle, go off the roadway several times. He had to force the vehicle to a stop, as the vehicle failed to stop after Wofford activated his Mars light and siren. Carlyle fell while exiting the vehicle, and a strong odor of alcohol emanated from his breath. His speech was slightly slurred and he was incoherent. Carlyle was unable to walk a straight line or stand, and refused to perform a finger-to-nose test. Wofford placed him under arrest for driving under the influence of alcohol (DUI) and read him the implied-consent warning that his refusal to take the breathalyzer test would result in suspension of his driving privileges. He repeated this warning two or three times at the scene and several times at the police station. In response to the requests to take the breathalyzer tests, Carlyle replied that he did not know what was going on and did not understand what Wofford was saying. Wofford testified Carlyle was almost incomprehensible at times and was very intoxicated. Carlyle was able to respond to other questions about where he had been, when he had been there, and what he had eaten during the day.

The only witness presented by the defense was Dr. Robert Meyer, a psychologist employed as director of the jail rehabilitation program for McHenry County, who testified, in essence, that alcohol impairs one's ability to make judgments.

Carlyle contends on appeal that Wofford's testimony established that he was extremely intoxicated, that he was unable to stand on his own, and that he was largely incoherent, and also showed that each time he was requested to submit to a breathalyzer test he responded by saying he did not understand. He further seemed to be confused about the requests to take the tests. Carlyle argues that as a matter of law Wofford's testimony fails to support a finding that he actually refused to submit to the tests.

The Illinois implied-consent statute provides, in pertinent part, that:

"(a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol *** content of such person's blood if arrested [for driving under the influence of alcohol] ***.

(b) Any person who is dead, unconscious or who is otherwise in a condition rendering such person incapable of refusal, shall be deemed not to have withdrawn the consent provided by paragraph (a) of this Section ***.

(c) A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in suspension of such person's license to operate a motor vehicle for six (6) months for the first such arrest and refusal and a suspension of such privilege for 12 months for the second and each subsequent such arrest and refusal within 5 years. Following this warning, if a person under arrest refuses upon the request of a law enforcement officer to submit to a test designated by the law enforcement agency as provided in paragraph (a) of this Section, none shall be given, but the law enforcement officer shall file with the clerk of the circuit court for the county in which the arrest was made, a sworn statement naming the person refusing to take and complete the test or tests requested under the provisions of this Section. Such sworn statement shall identify the arrested person, such person's driver's license number and current residence address and shall specify that a refusal by said person to take the test or tests was made. Such sworn statement shall include a statement that the arresting officer and [sic] reasonable cause to believe the person was driving the motor vehicle within this State while under the influence of alcohol, other

drug, or combination thereof and that such test or tests were made as an incident to and following the lawful arrest for an offense as defined in Section 11—501 of this Code or a similar provision of a local ordinance, and that the person after being arrested for an offense arising out of acts alleged to have been committed while so driving or in actual physical control of a motor vehicle refused to submit to and complete a test or tests as requested by the law enforcement officer.

\*\*\* Such hearing shall proceed in the court in the same manner as other civil proceedings, shall cover only the issues of whether the person was placed under arrest for an offense as defined in Section 11—501 of this Code or a similar provision of a local ordinance as evidenced by the issuance of a uniform traffic ticket; whether the arresting officer had reasonable grounds to believe that such person was driving or in actual physical control of a motor vehicle while under the influence of alcohol, other drug, or combination thereof; and whether such person refused to submit and complete the test or tests upon the request of the law enforcement officer. Whether the person was informed that such person's privilege to drive would be suspended if such person refused to submit to the test or tests shall not be an issue." Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 11—501.1.

In an implied-consent hearing, the State has the burden of proving by a preponderance of the evidence that the person to whom the request to take an intoxication test was given refused to submit to the test. (*People v. Schuberth* (1983), 115 Ill. App. 3d 302, 304, 450 N.E.2d 459.) A decision of the trial court in an implied-consent hearing will not be overturned on appeal unless it is contrary to the manifest weight of the evidence. (See *People v. Schuberth* (1983), 115 Ill. App. 3d 302, 304, 450 N.E.2d 459.) This State's implied-consent statute was adopted to assist in determining whether motor vehicle drivers suspected of intoxication are in fact under the influence of alcohol (*People v. Roflingsmeyer* (1984), 101 Ill. 2d 137, 139, 461 N.E.2d 410), and should be liberally construed to accomplish its obvious purpose—to protect the citizens of the State upon the highways. (*People v. Porretta* (1984), 127 Ill. App. 3d 572, 576, 469 N.E.2d 314.) The fundamental in statutory construction is to ascertain the intention of the legislature and then to give effect to it. *People v. Rink* (1983), 97 Ill. 2d 533, 539, 455 N.E.2d 64.

The crux of Carlyle's appellate argument is that there is no evidence that he in fact expressly refused to take the intoxication test.

He contends that when his responses are viewed objectively, they clearly indicate his confusion about the requests to submit to the tests, and the trial court's finding of his refusal to submit to the breathalyzer test was against the manifest weight of the evidence. In support of this contention, Carlyle cites numerous decisions from foreign jurisdictions which, he argues, require an express refusal to submit to an intoxication test under implied-consent statutes similar to ours. (See, *e.g., Commonwealth v. Hayden* (Ky. 1972), 484 S.W.2d 97; *Hyde v. Dorius* (Utah 1976), 549 P.2d 451; *Commonwealth v. Guarino* (1975), 19 Pa. Commw. 104, 339 A.2d 861; *Mills v. Swanson* (1969), 93 Idaho 279, 460 P.2d 704.) To the contrary, however, there is authority that the refusal to submit to an intoxication test need not be an express oral or physical refusal under circumstances where the defendant was intoxicated. *Sweitzer v. Department of Transportation* (1984), 140 Ariz. 536, 683 P.2d 335; *State v. McElwain* (1972), 80 Wash. 2d 624, 496 P.2d 963; *Hoban v. Rice* (1971), 25 Ohio St. 2d 111, 267 N.E.2d 311; *Kaufman v. State* (La. App. 1973), 286 So. 2d 723; see also *In re Schuttler* (S.D. 1978), 262 N.W.2d 61; *State v. Normandin* (1969), 284 Minn. 24, 169 N.W.2d 222.

In Illinois, no reviewing court has been presented with the precise factual question before us here, *i.e.,* when the admonition as to the consequences of a refusal is given in the form prescribed by statute, and the motor vehicle operator, though conscious, does not expressly refuse to submit to an intoxication test due to his confusion or disorientation caused by his own intoxication, whether he may be deemed to have refused. However, in a somewhat analogous case, *People v. Solzak* (1984), 126 Ill. App. 3d 119, 466 N.E.2d 1201, the appellate court held that the refusal to take an intoxication test by a person under arrest for driving while under the influence of alcohol need not be a "knowing" refusal to be the basis for a suspension of driving privileges under section 11—501.1. (126 Ill. App. 3d 119, 123, 466 N.E.2d 1201.) In *Solzak*, the evidence was conflicting as to whether the defendant refused the intoxication test. An officer testified the defendant refused, while the defendant testified she did not recall any conversation with the officer. In reaching its decision that a "knowing" refusal was not required under Illinois law, the appellate court stated:

> "It is clear to us that the purpose of Illinois' implied consent statute is to make the streets and highways safer for its citizens by making prosecution of intoxicated drivers easier. Allowing an individual who is too intoxicated to knowingly

refuse a blood test to escape the deterrent and retributive effects of the statute would not serve to further that purpose. Furthermore, such a result would circumvent the plain meaning of the statute, which calls for suspension of one's driver's license upon refusing to take the blood test. Noticeably absent from the statute is any exception to the rule for lack of knowing refusal, and we will not create such an exception by judicial fiat." 126 Ill. App. 3d 119, 122-23, 466 N.E.2d 1201.

In the case at bar, the evidence established that Officer Wofford asked Carlyle several times to take the breathalyzer test. Carlyle's responses were to the effect that he did not know what was going on and did not understand what Wofford was saying. Although there was no testimony of an express refusal to take the test, as there was in *Solzak*, Officer Wofford apparently concluded Carlyle's responses were tantamount to a refusal. Also, from this record it is clear that Carlyle was very intoxicated at the time. It is further apparent from the evidence that Carlyle's responses to Wofford's request to take the breathalyzer test resulted from his state of intoxication.

We conclude, as did the court in *Solzak*, that the purpose and meaning of the Illinois implied-consent statute, in assisting in the determination of whether motor vehicle drivers suspected of intoxication are in fact under the influence of alcohol, is to make the streets and highways of this State safer for its citizens by making prosecution of intoxicated drivers easier and by suspension of driver's licenses upon refusals to submit to an intoxication test. See also *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 139, 461 N.E.2d 410.

One who operates a motor vehicle is deemed to have given his consent to an intoxication test (Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 11—501.1(a)), and any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn that consent (Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 11—501.1(b)). However, the statute also provides that an operator may refuse an intoxication test with the resultant suspension of his driver's license (Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 11—501.1(c)). Here, Carlyle was not unconscious or otherwise in a condition rendering him incapable of refusal. Although it is readily apparent Carlyle was confused due to his own intoxication, he was able to communicate verbally and did answer other questions about where he had been and what he had eaten during the day. Thus, we do not believe Carlyle falls within the cate-

gory of persons described in section 11—501.1(b) as unconscious or its equivalent, making him incapable of a refusal. See *Sweitzer v. Department of Transportation* (1984), 140 Ariz. 536, 683 P.2d 335.

Nevertheless, Carlyle argues that there is no evidence he refused the test. While it is true from this record that Carlyle never expressly refused the breathalyzer test, which we believe from the facts was due to his confusion caused by his own intoxication, we believe the statute does not require an express refusal under these circumstances. To require an express refusal under these facts would exempt from the statutory coverage the precise class of persons— the drunken drivers—whom the implied-consent statute was intended to determine and remove from our highways. (See *State v. McElwain* (1972), 80 Wash. 624, 496 P.2d 963.) Such a narrow construction of the implied-consent statute requiring an express refusal under these facts would lead to the absurd result of exempting the very intoxicated driver from the penalty provided for refusal to comply with the request that he submit to a test. It is presumed that the legislature in passing legislation did not intend absurdity, inconvenience or injustice (*People v. Sansone* (1981), 94 Ill. App. 3d 271, 273, 418 N.E.2d 862), and the implied-consent statute should be liberally construed to effectuate its purposes. *People v. Porretta* (1984), 127 Ill. App. 3d 572, 576, 469 N.E.2d 314.

We, therefore, hold that under our implied-consent statute when the admonition as to the consequences of a refusal is given in the form prescribed by statute, and the motor vehicle operator, though conscious, does not expressly refuse to submit to an intoxication test due to his confusion or disorientation caused by his own intoxication, he shall be deemed to have refused such test. Carlyle, under the facts here, shall be deemed to have refused the test after being repeatedly requested to submit to a test, and the trial court's findings are not against the manifest weight of the evidence.

Affirmed.

UNVERZAGT and SCHNAKE, JJ., concur.