THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL HEDEEN, Defendant-Appellee.

Fifth District   No. 5—87—0460

Opinion filed March 30, 1989.

Charles Grace, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael Hedeen, of Murphysboro, appellee *pro se* (David L. Antognoli, of Bernard & Davidson, of Granite City, of counsel), for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Defendant, Michael Hedeen, was arrested on April 8, 1987, at 12:26 a.m. for driving under the influence of alcohol, pursuant to section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par 11—501). On that date, defendant was given a written notice of the summary suspension of his driving privileges pursuant to section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). On April 28, 1987, defendant filed a petition to rescind statutory summary suspension in which he alleged that he did not refuse to take the breathalyzer test and that his failure to complete the test was not due to any "fault or wilful intent" of himself. A hearing was held on May 28, 1987, in which two matters were consid-

ered. The first matter considered at the hearing was defendant's charge of driving under the influence of alcohol, to which defendant entered a plea of guilty. The remainder of the hearing concerned the defendant's petition to rescind his statutory summary suspension. After considering the evidence presented, the circuit court granted defendant's petition to rescind his summary suspension. From this order, the State appeals.

At the hearing on defendant's petition, Officer Murphy testified that on April 8, 1987, at approximately 1:14 a.m., he attempted to administer a breathalyzer test to the defendant. Officer Murphy advised defendant that refusal to take the breathalyzer test or failure to complete the test, which would be deemed a refusal, would result in defendant automatically losing his driving privileges for six months. Defendant agreed to take the breathalyzer test, and before administering the test, Officer Murphy instructed the defendant that upon seeing the words "Please blow" light up on the machine, defendant was to take a deep breath and blow into the mouthpiece, which would activate a tone. Defendant was to continue to blow into the mouthpiece until the tone stopped, approximately three to five seconds.

Officer Murphy attempted to give defendant the breathalyzer test five times. Before each of the tests, Officer Murphy explained to defendant that failure to complete the test would be considered a refusal to take the test and he repeated his instructions on how to take the test. Officer Murphy testified that in four of the test attempts by defendant the tone was never activated when defendant blew into the mouthpiece. According to the officer, for these four tests, defendant blew for only a short time, then removed his mouth from the mouthpiece and stated that he could not blow any longer. The machine printout for those four attempts indicated that these tests were an "invalid test."

In the fifth test, defendant blew into the mouthpiece and the tone was activated, but for only a short period of time. Officer Murphy stated that when the tone was activated, defendant "backed off of the mouthpiece" and the tone stopped. The printout of this test indicated that there was a "deficient sample" from which to obtain a reading.

Only two printouts of the test results were admitted into evidence, one stating "invalid test" and one stating "deficient sample," which were identified by Officer Murphy as the results of the first and last tests attempted. Officer Murphy recalled that the other three tests had indicated "invalid test." Officer Murphy initially testified that the printout stating "invalid test" was for defendant's first attempt to take the breathalyzer test and that the printout stating "de-

ficient sample" was for the last test attempted, but he later corrected himself and explained that the "deficient sample" was for the first test, and "invalid test" was for the last test.

According to Officer Murphy, a printout stating "invalid test" normally indicates operator error. However, Officer Murphy explained that in the four tests in which this occurred, the printouts of "invalid test" were due to his intentional resetting of the machine for defendant to retake the test after defendant failed to activate the tone. Officer Murphy did this at defendant's repeated insistence that he was willing to take the test. He further explained that "deficient sample" indicated that an insufficient air sample had been obtained. On cross-examination, Officer Murphy testified that if the machine were malfunctioning, it would have so indicated, which it did not do.

After the fifth attempt by defendant to take the test, Officer Murphy concluded that defendant was not cooperating and deemed his inability to complete the breathalyzer test a refusal. Officer Murphy conjectured that defendant was placing his tongue over the hole of the mouthpiece and blowing, thus making it appear that defendant was blowing into the mouthpiece. However, Officer Murphy did not see defendant's tongue over the mouthpiece.

Officer Robert Ledbetter testified that he was the officer who arrested defendant for driving under the influence of alcohol on April 8, 1987. Officer Ledbetter was present when Officer Murphy attempted to administer the breathalyzer test to defendant, and he corroborated that defendant attempted to take the test five times. Officer Ledbetter heard Officer Murphy explain to the defendant how to take the breathalyzer test, but that defendant did not follow the instructions given. He testified that Officer Murphy instructed defendant to blow continuously into the machine to produce a solid tone and to continue to blow until the tone stopped, but that defendant did not do this in any of the tests attempted. According to Officer Ledbetter, only an intermittent tone was ever activated. In Officer Ledbetter's opinion, he did not believe that defendant wanted to take the test even though defendant expressed that he was willing to do so. Officer Ledbetter admitted he was not a qualified operator of the breathalyzer machine.

Defendant testified that on April 8, 1987, he was arrested by Officer Ledbetter for driving under the influence. He admitted that in the evening prior to his arrest, from 6 p.m. to 12 midnight, he had consumed 8 to 10 beers. Defendant also admitted that he had entered a plea of guilty to the charge of driving under the influence of alcohol earlier in this hearing.

Defendant stated that he attempted to take the breathalyzer test

five times, and that Officer Murphy instructed him on how to take the test, but that the officer's instructions were unclear. Officer Murphy explained to him that when the "ready to blow" light came on, that he was to blow continuously until a tone came on, and that he was to blow continuously for approximately three to five seconds until the numbers registered on the machine. Defendant stated that he followed these directions but that nothing registered on the machine. He denied that he placed his tongue over the mouthpiece or that he restricted the flow of air into the mouthpiece in any manner. Defendant claimed that on the last two tests he attempted, he blew into the mouthpiece until he was beginning to hyperventilate and to feel dizzy.

Defendant knew that the failure to complete the test would be deemed a refusal as he knew the law and because the officers had told him. Defendant was adamant about wanting to complete the test. Defendant stated that he had a clear head that evening, and he admitted that he had no medical problems that would prevent him from performing the breathalyzer test.

After considering this evidence, the circuit court stated its findings, which were in pertinent part as follows:

> "The Court finds that it is undisputed that there were five tests administered to Mr. Hedeen on the evening in question commencing at 1:11 A.M. and terminating at 1:22 A.M. The Court has in the court file admitted Petitioner's Exhibit 1 being the first test administered to Mr. Hedeen and Petitioner's Exhibit 2 being the fifth test being administered to Mr. Hedeen. There is no question but that Mr. Hedeen did not complete the test. In Chapter 95½, Section 2–118.1, subparagraph (b), subparagraph 3 regarding the issues, 'Whether such person, after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit to or complete such test or tests to determine the person's alcohol or drug concentration.' This is the standard implied consent, old implied consent situation regarding the issues. I don't believe, and there is no case that I know of in the state of Illinois, that the word 'complete' is carved in granite. I think that failure to complete the test requires some showing that it was either an affirmative action or an affirmative action by the defendant [sic], that the defendant did something so that the test could not be completed. *** But based upon all the testimony here, I do not find any evidence to indicate to this Court that the failure for this test to be completed was attributable to

Mr. Hedeen. I'm going to find no refusal."

On appeal, the State raises only one issue, whether defendant's conduct constituted a refusal to take the breathalyzer test. The State contends that the defendant's failure to complete the breathalyzer test was either willful or was the result of his intoxicated condition and that the circuit court's rescission of defendant's summary suspension was manifestly erroneous. Defendant contends that the issue is one of credibility and that the circuit court found that Officer Murphy was not credible.

■ Initially, we note that although the State proceeded first at defendant's hearing on his petition, that the burden of proof rests with the defendant. (*People v. Orth* (1988), 124 Ill. 2d 326, 530 N.E.2d 210.) Therefore, our analysis must be from the perspective of whether the defendant presented sufficient evidence to satisfy his burden.

■ As the circuit court correctly stated, section 2—118.1(b)(3) of the Illinois Vehicle Code states that a person's driving privileges will be suspended if that person refused to submit to or complete a breathalyzer test. (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1(b)(3).) Thus, under this section, a failure to complete the test alone is sufficient to trigger the statutory summary suspension penalty. In the case *sub judice*, the circuit court, in its order, found that the defendant did not complete the test, but that there was no evidence that this failure was attributable to any affirmative action by the defendant. Therefore, the question we must resolve is, where there is no apparent conduct by the defendant which prevents him from completing the breathalyzer test, will the failure to complete the test be deemed a constructive refusal by the defendant?

■ It has been held that an inability to take the test because of intoxication, and, by inference, not because of an intentional act by the defendant, is sufficient to be deemed a refusal. (*People v. Carlyle* (1985), 130 Ill. App. 3d 205, 474 N.E.2d 9.) Similarly, we are of the opinion that it is unnecessary to find that the defendant performed an affirmative action to conclude that a defendant's failure to complete the test is a constructive refusal. If we were to conclude otherwise, the purpose of the statute, *i.e.*, to protect the citizens of Illinois by removing drunk drivers from the highways, would be circumvented. (*People v. Doherty* (1986), 144 Ill. App. 3d 400, 494 N.E.2d 933; *Carlyle*, 130 Ill. App. 3d 205, 474 N.E.2d 9.) To accomplish its statutory purpose, section 2—118.1 is to be liberally construed. *Carlyle*, 130 Ill. App. 3d 205, 474 N.E.2d 9.

Having determined that a defendant's actions need not be an affirmative or intentional act in order to satisfy the statute, we must

evaluate the evidence of this case to determine why the defendant was unable to complete the breathalyzer test. It would appear that there are three logical sources for why a breathalyzer test cannot be completed: (1) a malfunctioning machine; (2) operator error; or (3) the defendant's inability or unwillingness to complete the test.

In the instant case, the evidence presented did not show that the breathalyzer machine malfunctioned when defendant attempted to take the tests. Officer Murphy stated that if the machine had malfunctioned, the machine would have so indicated. Officer Murphy testified that he had changed the mouthpiece on the machine three times during the five tests attempted, thereby removing any conclusion that the failure to complete the test was due to a defective mouthpiece. Evidence was not presented as to when the breathalyzer machine had been certified for accuracy prior to defendant's attempts to take the tests, but there was evidence that the machine was certified for accuracy on May 26, 1987. Therefore, it cannot be concluded from this evidence that the breathalyzer machine malfunctioned.

It also cannot be determined that Officer Murphy erroneously operated the breathalyzer machine. Officer Murphy testified that he was a licensed operator of the machine. He explained that the tickets from the machine which stated "invalid test" would normally indicate operator error, but that he intentionally invalidated the tests so that he could reset the machine for the defendant to retake the test. Additionally, on defendant's first attempt to take the test, a short tone was produced and enough air entered the machine's chamber to indicate there was an insufficient air sample and a printout was given which stated "deficient sample." This evidence gives rise to the inference that the machine was being properly operated but that the defendant was supplying an insufficient air sample. This evidence also supports the conclusion that the machine was functioning properly.

■ We further find that there was evidence in the record that the defendant's actions were responsible for his failure to complete the test. Officer Murphy testified that he did not believe that defendant was cooperating. Officer Ledbetter's testimony that defendant was not following Officer Murphy's instructions reinforced Officer Murphy's testimony. The only evidence presented by the defendant was his testimony that he followed Officer Murphy's instructions when he attempted the tests and that he did not restrict the flow of air from his lungs into the mouthpiece. The evidence presented supported the inference that defendant was not supplying a sufficient air sample for the machine to obtain a reading, an act attributable to the defendant to circumvent the breathalyzer test. Therefore, we find that the

defendant did not prove that the failure to complete the breathalyzer test was not attributable to him by a preponderance of the evidence, that defendant's failure to complete the test was properly deemed to be a constructive refusal, and that the circuit court's order rescinding defendant's summary suspension was manifestly erroneous.

Lastly, we find the defendant's contention that the circuit court found Officer Murphy's testimony was not credible without merit. The circuit court did not state that it did not believe that the officer lacked credibility, and, in fact, the circuit court makes no specific finding as to why the test was not completed. The only finding the circuit court made was that the defendant did not perform an affirmative act to defeat the breathalyzer test.

For the foregoing reasons, we reverse the order of the circuit court of Jackson County rescinding the defendant's statutory summary suspension and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

WELCH, P.J., and HARRISON, J., concur.