2016 IL App (2d) 150691
No. 2-15-0691
Opinion filed February 8, 2016

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF SPRING GROVE, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15-TR-10211 |
| | ) | |
| DONALD J. PEDERSEN, | ) | Honorable |
| | ) | Joel D. Berg, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Donald J. Pedersen, was arrested for driving while under the influence of alcohol (DUI) (see generally 625 ILCS 5/11-501 (West 2014)).  Because he failed to complete a Breathalyzer test, his driving privileges were summarily suspended (see 625 ILCS 5/11-501.1(e) (West 2014)).  He petitioned to rescind that suspension (625 ILCS 5/2-118.1(b) (West 2014)), arguing that he never refused to complete the breath test.  The trial court denied the petition, defendant moved the court to reconsider, the court denied that motion, and this timely appeal followed.  At issue on appeal is whether defendant refused to submit to a Breathalyzer test.  For the reasons that follow, we conclude that he did.  Accordingly, we affirm.

¶ 2    The evidence presented at the hearing on defendant's petition to rescind consisted of brief testimony from defendant and video taken of defendant after he was arrested for DUI and transported to the police station.  During his testimony, defendant stated that he never refused a breath test and "asked repeatedly to take the [B]reathalyzer."

¶ 3    In the video, the arresting officer reads the "Warning to Motorists" (Warning) to defendant, who is polite and respectful.  After reading the Warning, the officer asks defendant if he has any questions.  Defendant, who responds that he has a "bunch of questions," proceeds to ask the officer about the effect of a prior conviction of DUI if he fails the Breathalyzer test.  After the officer says that he does not know the answer to that question, defendant and the officer have a discussion about defendant calling an attorney at 3 a.m.  Defendant then debates whether he should take the test.  After a period of silence, the officer refuses to give defendant a glass of water, defendant asks the officer to read the Warning again, the officer refuses to do so, and defendant asks the officer if a prior finding of not guilty of DUI would affect him if he fails the test.  The officer explains to defendant that the suspension of driving privileges is different from a criminal DUI case, defendant and the officer have a discussion about how many times defendant has been arrested for DUI, the officer tells defendant why the summary-suspension laws are in place, and the officer advises defendant that he could drive him home if defendant posts bail.

¶ 4    After a long silence, during which the officer is apparently processing defendant, the officer asks defendant if he has any other questions.  Defendant then engages the officer in sporadic conversations about where the officer likes to vacation, when the officer is going to retire, and various jobs defendant has held over the years.  After the officer asks defendant for information he needs in processing defendant, such as whether defendant has any tattoos or other

identifying marks, the officer inquires, "Take the test?" Defendant tells the officer that this is a "huge" decision he needs to make, that he would "love to take it," but that he "do[es]n't know." After another long silence, the officer informs defendant that he cannot make him take the test. Defendant replies, "[Of] course not."

¶ 5   The officer continues processing defendant, he asks defendant how he is going to pay his bail, defendant asks about the consequences of blowing over or under 0.08, and the officer responds. After another long silence, the officer allows defendant to go to the bathroom and gets defendant a cup of water. The officer then continues processing defendant and takes his fingerprints. Thereafter, the officer advises defendant about when the suspension of his driving privileges will take place, explains to defendant that he can petition to rescind that suspension, and reads to defendant his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant tells the officer that he would like to cooperate but should probably contact an attorney. The officer takes that as an invocation of defendant's right to counsel and has defendant sign the *Miranda*-rights form.

¶ 6   The officer continues processing defendant, asking defendant for his phone number and a description of his car. The officer then takes defendant's bail money, and, after the officer explains to defendant how he can retrieve his car, about 1 hour and 10 minutes after the officer began reading the Warning to defendant, defendant asks, "Did you want to Breathalyze me?" The officer tells defendant that he asked defendant to take the test and that, rather than responding, defendant "hemmed and hawed" about what he should do. The officer explains that, at this point, the period within which defendant could have taken the test has expired. Thus, defendant cannot take a breath test now. In reply, defendant says that he "did not blatantly refuse." After further discussions, wherein the officer claims that he told defendant that the time

within which to take the test would expire soon,[1] defendant pleads with the officer to allow him to take the test. Allegedly, after the video stopped, the officer gave defendant a portable breath test (PBT). Nothing in the record indicates what the PBT revealed.

¶ 7    The trial court denied defendant's petition to rescind. In doing so, the court pinpointed where in the video (1) the officer asked defendant if he had any questions about the Warning; (2) the officer asked defendant whether he wished to submit to testing; (3) defendant told the officer that he did not know whether he should take the Breathalyzer test; (4) the officer told defendant that he could not force him to take the breath test; and (5) defendant finally asked the officer if he was going to administer the breath test. Based on what transpired, the court found that, although defendant did not say no when asked to take the Breathalyzer test, he never said yes either. In the court's view, this was a refusal.

¶ 8    On appeal, defendant argues that the trial court should have granted his petition to rescind. When we examine a trial court's ruling on a defendant's petition to rescind, we employ a two-part standard of review. *City of Highland Park v. Kane*, 2013 IL App (2d) 120788, ¶ 11. First, we consider the trial court's factual findings and, where applicable, the court's credibility determinations. *Id.* " '[W]e must accord great deference to the trial court's factual findings and credibility assessments and will reverse those findings only if they are against the manifest weight of the evidence.' " *Id.* (quoting *People v. Lurz*, 379 Ill. App. 3d 958, 965 (2008)). "Factual findings or credibility determinations are 'against the manifest weight of the evidence only if the opposite conclusion is clearly evident.' " *Id.* (quoting *People v. Tate*, 367 Ill. App. 3d 109, 113 (2006)). "Second, we review the trial court's ultimate legal ruling." *Id.* In doing so,

---

[1] Defendant indicates that he never heard the officer say this. When we reviewed the video, we also did not hear the officer say it.

"we are 'free to undertake [our] own assessment of the facts in relation to the issues and may draw [our] own conclusions when deciding what relief should be granted.' " *Id.* (quoting *People v. Hackett*, 2012 IL 111781, ¶ 18). "Accordingly, '[the] trial court's ultimate legal ruling as to whether [rescission] is warranted is subject to *de novo* review.' " *Id.* (quoting *Hackett*, 2012 IL 111781, ¶ 18).

¶ 9 Here, it is undisputed that, before the time to decide whether to take the Breathalyzer test expired, defendant never expressly refused, or expressly agreed, to take the test. The question thus is whether defendant's failure to decide constituted a refusal. In addressing that issue, we observe that section 11-501.1 of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501.1 (West 2014)), the implied-consent statute (see *Kalita v. White*, 342 Ill. App. 3d 796, 805 (2003)), provides the procedures that an officer must follow when asking a defendant to submit to chemical tests to detect the presence of alcohol or any other intoxicating compound in the defendant's system and the penalties that are imposed when a defendant refuses to submit to such tests. Under this statute, any person who drives a motor vehicle on an Illinois highway is deemed to have consented to submit to testing to determine the amount of alcohol or any other intoxicating compound in his system if he is arrested for DUI. 625 ILCS 5/11-501.1(a) (West 2014). A refusal to submit to testing results in the statutory summary suspension of the defendant's driving privileges. 625 ILCS 5/11-501.1(c) (West 2014).

¶ 10 In addressing whether defendant refused, we note that no court has found that a refusal occurs only when there is an express verbal refusal. See *People v. Solzak*, 126 Ill. App. 3d 119, 123 (1984) ("Noticeably absent from the [implied-consent] statute is any exception to the rule for lack of knowing refusal, and we will not create such an exception by judicial fiat."). Rather, "the fact of a refusal must be based upon an objective review of the officer's question and the

defendant's response." *People v. Brennan*, 122 Ill. App. 3d 602, 604 (1984). A defendant is deemed to have refused to submit to testing if, after a clear warning of the consequences of refusing to submit to testing, the officer specifically asks the defendant whether he wishes to take a chemical test, and the defendant, by word, act, or omission, clearly refuses to submit to testing. *Id.* at 603. Under this rubric, a defendant refuses when, in lieu of expressly refusing, the defendant insists on a nonexistent right to counsel (see *People v. Buerkett*, 201 Ill. App. 3d 140, 145 (1990)), fails to respond due to confusion or disorientation that his own intoxication caused (*People v. Carlyle*, 130 Ill. App. 3d 205, 211 (1985)), or feigns consent by repeatedly failing to complete the test as instructed (*People v. Schuberth*, 115 Ill. App. 3d 302, 303-04 (1983)).

¶ 11    Defendant argues that he never refused to submit to a Breathalyzer test and that the arresting officer should have told him that the time to take the test was going to expire. We disagree. Addressing defendant's second point first, nothing in the implied-consent law requires the officer to advise the defendant about the time within which he must submit to the test.[2] See 625 ILCS 5/11-501.1 (West 2014). If we were to conclude that the officer had such an obligation, we would be reading into the statute terms that the legislature did not provide, which is something we cannot do. See *Nordine v. Illinois Power Co.*, 32 Ill. 2d 421, 428, (1965) ("The rule, not only in this State but in most jurisdictions, is that plain and unambiguous provisions of a statute do not need construction[,] and the courts cannot read into a provision exceptions or

---

[2] Although, as defendant notes, the relevant law *used to* provide that the Warning advise the defendant "that his refusal to submit to either analysis within 90 minutes after receiving the notice may result in the suspension of his privilege to operate a motor vehicle" (Ill. Rev. Stat. 1973, ch. 95½, ¶ 11-501.1(a)(2)), that is no longer the law, and, in any event, defendant does not contend that he consented to testing within the time allotted.

limitations which depart from its plain meaning."); see also *Carlyle*, 130 Ill. App. 3d at 211 (refusing to read into the implied-consent statute a requirement that a defendant must expressly refuse a chemical test, as nowhere does the statute require this).

¶ 12    With regard to defendant's main claim, that he never refused to submit to a Breathalyzer test, we find instructive *People v. Myers*, 130 Ill. App. 3d 681 (1985).  There, the arresting officer asked the defendant three times whether he was going to complete a Breathalyzer test.  *Id.* at 682.  After the first request, the defendant indicated that he "refused to refuse to take the test but also would not agree to take the test."  *Id.*  Following the second request, the defendant stated that "he would not refuse to take the test but would not consent to it."  *Id.*  The defendant failed to respond after the officer asked the defendant a third time whether he wanted to take the test. *Id.*

¶ 13    The appellate court determined that the defendant's " 'refusal to refuse' " constituted a refusal under the implied-consent statute.  *Id.* at 683.  In reaching that conclusion, the court noted that the implied-consent statute requires a motorist arrested for DUI to either consent to testing or refuse the test.  *Id.*  Because a defendant has only two options, a defendant who fails to complete a test will be deemed to have refused.  *Id.*

¶ 14    Here, defendant was asked whether he wished to submit to a Breathalyzer test.  Instead of submitting to the test or indicating that he would not take the test, defendant "hemmed and hawed," advising the officer that making a choice involved a "huge" decision that he did not know how to resolve.  In the midst of wrestling with what choice he should make, defendant engaged the officer in various topics of conversation, some of which had no bearing on whether defendant should take the test.  In our view, this was a delay tactic that amounted to a " 'refusal to refuse' " (*id.*), which, incidentally, defendant's own statement that he "did not blatantly

refuse" supports. Under the implied-consent law, such a " 'refusal to refuse' " constitutes a simple refusal. *Id.* Accordingly, as in *Myers*, defendant's petition was properly denied. *Id.*

¶ 15    For the above-stated reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 16    Affirmed.