STATE EX REL. DONALD VANOUSE AND ANOTHER
v. JAMES B. HENRY AND ANOTHER.

154 N. W. (2d) 503.

November 17, 1967—No. 40,523.

Procedure, and Rule 103.04, subd. 2, of the proposed Rules of Civil Appellate Procedure.

*Douglas M. Head,* Attorney General, *William J. Hempel,* Deputy Attorney General, and *Raymond M. Lazar,* Special Assistant Attorney General, for appellants.

*Wright, Wanglie & Zimmerman* and *F. Gordon Wright,* for respondents.

ROGOSHESKE, JUSTICE.

The state appeals from an order granting to defendants judgment notwithstanding a jury's verdict and a conditional new trial, and from the judgment entered in favor of defendants.

The State Commission Against Discrimination after a hearing—and subsequently a jury after a trial de novo in the district court—found defendants "guilty" of an "unfair discriminatory practice" forbidden by

Minn. St. 363.03, subd. 2(1)(a), of the State Act Against Discrimination.[1]

Specifically, the jury by a five-sixths verdict found that defendants denied or withheld the rental of an apartment owned by them to complainants, Donald and Evelin Vanouse, a young married couple, because Mrs. Vanouse is a Negro. The district court, by its initial post-trial order, set aside the verdict essentially upon the ground that the verdict was not justified by the "evidence adduced at the trial." However in an accompanying memorandum the court indicated it felt that it had "erred in submitting the case to the jury as a civil action," pointing out that thereby defendants were denied the protection afforded by the rules governing criminal proceedings, including the presumption of innocence, proof beyond a reasonable doubt, and a unanimous verdict. Seventeen days after this order was filed it was amended to grant defendants a new trial if the order for judgment n.o.v. was reversed. The court did not specify the grounds on which a conditional new trial was ordered.

■ On the determinative fact issue, we hold that the evidence adequately supports the jury finding that defendants engaged in an unfair discriminatory practice by denying or withholding the rental of their apartment because one of the complainants is a Negro. The record is replete with evidence from which the jury might reasonably have drawn inferences in favor of either complainants or defendants, depending largely upon the credibility of the witnesses and the reasonableness of their testimony. In such cases a jury issue is presented, and its determination is binding upon a reviewing trial or appellate court despite the trial court's expressed disagreement with the jury's resolution of a disputed fact issue. Godeen v. Bennett, 265 Minn. 179, 120 N. W. (2d) 867.

Omitting details, the testimony of the complainants' witnesses dis-

---

[1] Minn. St. 363.03, subd. 2, in pertinent part provides: "It is an unfair discriminatory practice:

"(1) For an owner * * * or other person having the right to * * * rent or lease any real property * * *

"(a) to refuse to * * * rent, or lease or otherwise deny to or withhold from any person * * * any real property because of the race, color, creed, religion, or national origin of such person * * *."

closed that in late June 1965 defendants had available for rent an apartment in their fourplex located on Fourth Street Southeast in Minneapolis about 1 block from their residence. On June 28, Mrs. Vanouse, a teaching assistant and student at the University of Minnesota, in response to a "For Rent" sign first contacted defendant Mr. Henry, who described the apartment, told her the rent was $80 a month and that she would have to call again to view the apartment since the apartments were shown by defendant Mrs. Henry, who was not at home. She telephoned Mrs. Henry 2 days later on June 30 at 5:55 p. m. and was informed by her that the apartment was available and that she could see it as soon as she arrived, which Mrs. Vanouse indicated would be within 10 minutes. Mrs. Vanouse, with her husband (a teaching associate and also a university graduate student), arrived at the Henry residence less than 10 minutes later. Answering the doorbell, Mrs. Henry informed them that the apartment was not available and indicated, after Mrs. Vanouse identified herself as the person who telephoned 10 minutes earlier, that it had been promised to "a woman." The Vanouses returned to their residence and discussed the incident with friends, including a young married couple. Less than 1 hour later, Mrs. Henry showed the apartment to this couple upon their pretended interest in renting it. They testified that Mrs. Henry informed them the apartment was available for rental at $70 a month. The next day, Mrs. Henry, in the presence of the Vanouses, the young couple, and a representative of the State Commission Against Discrimination (who urged her to reconsider rental to the Vanouses), insisted that the apartment had been rented by her husband to "a man"—presumably during the interval of the telephone call and the Vanouses' arrival—and that she was not told of it until after Mrs. Vanouse's telephone call. On July 9, the apartment was shown to another witness, who testified she observed no sign of occupancy and that Mrs. Henry represented it as available within 2 weeks by sublease from the man renting it. The tenant who rented the apartment on July 24 for $80 monthly also saw no signs of occupancy when it was shown to him a few days earlier. He testified that, while he gave his rental checks to Mrs. Henry, his receipts were signed by a roomer in the Henry home who the Henrys advised was his sublessor. The testimony of defendants, their son, and the roomer

is to the effect that, after two earlier refusals, Mr. Henry, without his wife's knowledge but in his son's presence, consented to rent the apartment to their roomer for $75 monthly at about 5:30 or 6 p. m. on June 30, and that the son informed Mrs. Henry of the agreement between the time of Mrs. Vanouse's telephone call and the time of the Vanouses' arrival at the Henry home that same evening. Because their roomer's plans for occupying the apartment changed in the latter part of July, Mr. Henry agreed to and did sublet the apartment for him. Both defendants denied any unfair discrimination toward the Vanouses, Mr. Henry testifying that they had previously rented "to a Chinese man and gentile woman."

From this brief summary of the testimony, it is apparent that the jury was required to choose between diverse inferences based upon circumstantial evidence. By merely rejecting as unlikely the testimony that the apartment was alternately available and unavailable within a period of 10 minutes on the evening of June 30, the jury could have preferred the inferences urged by the state and concluded that they reasonably outweighed the evidence supporting defendants' denial of any unfair discrimination. Thus, there is ample evidentiary support for the verdict and it was error to find it insufficient.

■ We agree with the state that the court correctly submitted the case to the jury as a civil action. The procedural provisions under which these proceedings were instituted and in effect at the time of the trial [2] required no criminal complaint to be filed, no warrant to issue, and no criminal procedures to be employed either at the hearing before the commission or upon an appeal de novo in the district court. Nor is any fine or jail sentence provided for a violation. The only sanctions permitted are a cease and desist order and "such other affirmative action as * * * will effectuate the purposes of this chapter." [3] While it is provided that a violation may be punished as a contempt, only a willful

---

[2] The 1967 legislature substantially revised the procedural sections of the act, repealing the provision providing for a de novo appeal from the commission's decision as well as the provision affording the option to the person complained against of a jury trial in district court and substituting instead a certiorari-type trial court review of the agency decision pursuant to Minn. St. 15.0424 and 15.0425. L. 1967, c. 897, §§ 21 and 29.

[3] §§ 363.07, subd. 4, and 363.08, subds. 7 and 8.

violation of an order of the district court and not of the administrative agency is punishable as a contempt by fine and imprisonment.[4] Such a provision is an insufficient basis to infer a legislative intent to make an unfair discriminatory practice a criminal offense since the contempt power of a court is frequently made available to enforce a civil or private wrong. Most significantly, a legislative intent that civil procedures should govern appears clearly indicated in § 363.08, subd. 3, of the act, authorizing proceedings de novo in the district court, by the provision that "[a]ll trials or hearings arising under this section shall be given precedence as nearly as practicable over all other pending civil actions." Contrary to defendants' argument, neither the fact that the form of the verdict was "guilty," which we believe was inappropriate,[5] nor the fact that the state was a party, as is the case in proceedings to establish paternity, render these proceedings criminal in nature. State v. Jeffrey, 188 Minn. 476, 247 N. W. 692. For these reasons we hold that the act is not a criminal statute and the violation is not a criminal offense.

■ Although the court overlooked the requirement of specifying the grounds upon which the conditional order for a new trial was based, it could only have been based upon the same grounds as the order granting judgment n.o.v., namely, insufficiency of the evidence coupled with an error of law. While defendants make no point that such an order is not appealable under Minn. St. 605.09(e) and our prior decisions, we believe this case again demonstrates the necessity of reviewing the order for the reasons and under the rule recently announced in McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. (2d) 488, filed herewith. Since the evidence justifies the verdict and it was not error to treat the case as a civil action, neither the order granting judgment n.o.v. nor the conditional order of a new trial can be upheld.

Reversed with directions to reinstate the jury verdict.

---

[4] § 363.09.

[5] The language of § 363.07, subds. 4 and 5, more likely intends a finding that the respondent "has engaged" or "has not engaged" in an unfair discriminatory practice.