**Roberta BARNES and Charles Barnes, Appellants,**

v.

**WEIS MANAGEMENT COMPANY, Pam Smith, Respondents.**

No. C2–83–1519.

Court of Appeals of Minnesota.

May 1, 1984.

Mark C. Mishek, St. Paul, for appellants.

John B. Arnold, Michaels, Seeger, Rosenblad & Arnold, Rochester, for respondents.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Shortly after leasing an apartment from respondents, appellants received an eviction notice for failure to maintain "reasonable quiet," a condition of the lease. Appellants remained in the apartment and respondents instituted unlawful detainer proceedings. Judgment was entered for respondents. This appeal ensued. We reverse and remand for the taking of further evidence on the issue of whether the eviction was motivated by racial discrimination.

## ISSUE

Are appellants entitled to a remand for an evidentiary hearing as to whether respondents' eviction notice was racially motivated?

## FACTS

Roberta and Charles Barnes leased an apartment from Weis Management Company. The Barneses and their small child occupied the apartment on approximately July 1, 1983, but did not sign a lease at that time.

About three weeks after appellants moved in, respondents complained to appellants that they had too many visitors and that they were being too loud. By letter dated July 19, 1983, respondents' property manager, Robert D. Weisner, warned ap-

pellants that he had received several complaints about excessive noise made by a stereo and by two teenage sons of Charles Barnes who were visiting appellants at that time.

Roberta Barnes testified that in response to the letter, she called Weisner and told him that the complaint regarding the stereo could not have been true because the stereo was not working. She offered to allow Weisner or his agent to enter the apartment to examine the stereo. Appellants also took the boys to a relative's home to stay during the day until they returned to their mother in another state on July 27.

On approximately July 28, the respondents' resident property manager, Pam Smith, brought a written lease to appellants for their signatures. At that time, Smith said nothing further about appellants breaking rules, making too much noise, or having too many visitors.

Less than one week after appellants signed the lease, respondents served a notice of eviction upon appellants, purportedly for failure to observe "rule # 1" in their rental agreement, which states:

> Resident agrees to observe reasonable rules for the building, and respect the rights of others to reasonable quiet.

Smith testified that the eviction notice was sent because appellants had a loud, late-night party in their apartment on August 2. Appellants denied that they had held a party that night.

The trial court found that appellants had violated the "rule # 1" condition of the lease and ordered a writ of restitution which was stayed upon the filing of this appeal.

## DISCUSSION

Minn.Stat. § 566.03, subd. 2, provides:

> It shall be a defense to an action for recovery of premises following the alleged termination of a tenancy by notice to quit for the defendant to prove by a fair preponderance of the evidence that:
>
> (1) The alleged termination was intended in whole or part as a penalty for the defendant's good faith attempt to secure or enforce rights under a lease or contract, oral or written, or under the laws of the state, any of its governmental subdivisions, or of the United States; or
>
> (2) The alleged termination was intended in whole or part as a penalty for the defendant's good faith report to a governmental authority of the plaintiff's violation of any health, safety, housing or building codes or ordinances.
>
> If the notice to quit was served within 90 days of the date of any act of the tenant coming within the terms of clauses (1) or (2) the burden of proving that the notice to quit was not served in whole or part for a retaliatory purpose shall rest with the plaintiff.

■ Under this statute, a tenant is allowed to defend an unlawful detainer action by establishing that eviction was in retaliation for good-faith efforts on the tenants' part to enforce contractual or statutory provisions designed for his benefit. *Parkin v. Fitzgerald*, 307 Minn. 423, 427–28, 240 N.W.2d 828, 831 (1976).

In *Parkin*, the Supreme Court adopted the following standard in determining whether a landlord has satisfied his burden of proving a nonretaliatory purpose:

> A landlord must establish by a fair preponderance of the evidence *a substantial nonretaliatory reason for the eviction, arising at or within a reasonably short time before service of the notice to quit.* A nonretaliatory reason is a reason wholly unrelated to and unmotivated by any good-faith activity on the part of the tenant protected by the statute (e.g., nonpayment of rent, other material breach of covenant, continuing damage to premises by tenants, or removal of housing unit from market for a sound business reason). Such a standard will give full protection to tenants and will enhance the legislative policy of liberal construction of statutory covenants to insure adequate housing.

*Id.* at 832–33 (emphasis added).

■ It is appellants' contention that the legal right that they insist upon is the right

to rent premises regardless of their race. *See* Minn.Stat. § 363.03, subd. 2(1)(a) and (b); *State v. Henry,* 278 Minn. 344, 154 N.W.2d 503 (1967). They assert the right to the defense of retaliation under Minn. Stat. § 566.03, subd. 2(1) because "the alleged termination was intended * * * as a penalty for the defendants' good faith attempt * * * to enforce rights under the laws of the state * * *."

■ The procedure set forth in *Parkin,* after the tenant has met his burden of proving that the termination of tenancy was intended in whole or part as a penalty for his good faith attempt to secure or enforce his right to lease without discrimination, imposes the burden of proof on the landlord to show a nonretaliatory purpose for the eviction. Tenants should, however, have an opportunity to rebut this by showing that the allegedly nonretaliatory purpose was actually a pretext used as a "cover" for discrimination. Such delineation of procedure has been applied in discrimination in employment cases by the United States Supreme Court in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and adopted in Minnesota in *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428 (Minn.1983); *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Racial discrimination is shown by cumulative evidence. The following accumulation of evidence raises a colorable claim that the eviction may have been in retaliation for the Barneses act of renting: The appellants' one witness testified that she had never heard any noise from appellants' apartment and that Pam Smith had solicited from her complaints about the Barneses; appellants were blamed by Pam Smith for conduct of anyone apparently of their same race. A post judgment statement made by the respondents' agent to Charles Barnes that "It's niggers like you who let trash like this in the apartment" constitutes newly discovered evidence.

## DECISION

Although the issue of discrimination was raised in the proceedings below, since there were no findings on that subject, and the statute does not set forth a procedure for amended findings or motion for rehearing, we order the matter remanded with directions to the trial court to take evidence on the issue and make appropriate findings. This does not foreclose the remand court from receiving evidence on other issues including circumstances surrounding the tenancy since trial.

Writ of restitution vacated and remanded.