ROSS, Judge
Landlord Central Housing Associates LP notified tenant Aaron Olson that it was terminating his apartment lease on multiple grounds, including unpaid rent, unpaid utilities, and providing false information in his lease application. Olson refused to vacate and instead filed a report with the Minnesota Department of Human Rights alleging that Central Housing had discriminated against him on account of his disability, his daughter's ethnicity, and his daughter's religion. Central Housing filed an eviction complaint with the district court after Olson held over after the lease period ended. A jury found that Olson materially breached the lease but also that Central Housing retaliated against him for attempting to secure or enforce his rights. The district court reasoned that Olson was entitled to maintain possession based on a retaliatory-eviction defense available under Minnesota Statutes, section 504B.285, subdivision 2 (2016), and section 504B.441 (2016). Because that defense in section 504B.285 does not apply in an eviction action based on breach of lease, and the defense in section 504B.441 does not apply unless the tenant has filed a tenant-remedies *487 action in the district court, we reverse and remand.
FACTS
Aaron Olson entered a one-year apartment lease with Central Housing Associates LP beginning May 1, 2016. On January 20, 2017, Central Housing gave Olson written notice that it was terminating his lease on February 28. The termination notice cited breaches of multiple lease terms, asserting that Olson had submitted false information in his lease application, repeatedly failed to timely meet his payment obligations under the lease, shared the unit with a personal-care attendant whose criminal record disqualifies her from residing there, and tolerated disruptive behavior. A month after receiving the notice, but before the termination date, Olson filed a report with the Minnesota Department of Human Rights, alleging that Central Housing discriminated against him. His allegations emphasized that he has a disability and that his daughter is a Muslim who wears a hijab. He alleged that Central Housing began occasionally notifying him about lease infractions only after he wrote Central Housing an email complaining that a maintenance worker verbally harassed his daughter.
Olson refused to vacate the property, and, after the lease period ended, Central Housing filed a holdover eviction action in district court. A jury trial followed.
The district court's draft jury instructions and special-verdict form invited a finding regarding landlord discrimination and landlord retaliation as a defense to eviction. The district court omitted the discrimination-defense references after Central Housing argued that the defense cannot apply here, but Central Housing did not object to the retaliation-defense references. The jury found that Central Housing proved that "Olson materially violated the terms of the lease." But it also found that Central Housing "retaliated against [Olson] in whole or in part as a penalty for his good faith attempt to secure or enforce rights under the lease or the laws of the State of Minnesota or the United States."
After trial, Central Housing argued that the jury's retaliation finding is legally irrelevant because the retaliation defense does not prevent an eviction premised on breach-of-lease allegations. The district court rejected the argument as a matter of procedure, concluding that Central Housing had waived it by failing to raise it sooner, and as a matter of law, concluding that the defense applies to an eviction action even when it is premised on breach-of-lease allegations.
Central Housing appeals.
ISSUE
Did the district court properly apply the jury's retaliation finding to grant possession to the tenant rather than the landlord in this breach-of-lease eviction action?
ANALYSIS
Central Housing argues that the district court misapplied the law when it relied on the jury's retaliation finding to deny Central Housing possession after its eviction action. We review a district court's application of the law de novo. Harlow v. State, Dep't of Human Servs. , 883 N.W.2d 561, 568 (Minn. 2016). Central Housing also argues that the district court improperly instructed the jury on the retaliatory-eviction defense. If Central Housing is correct that the district court cannot, as a matter of law, rely on retaliation to prevent landlord repossession in an eviction action premised on a breach of lease, we need not reach Central Housing's jury-instruction argument. We therefore first answer *488 whether the retaliatory-eviction defense applies here.
The district court did not fully explain why it concluded that the retaliation defense was available to defeat Central Housing's eviction action. The district court's order quotes Minnesota Statutes, sections 504B.285 and 504B.441, notes the policies underlying the defenses, and concludes, "It is reasonable for the Legislature to have enacted a statutory scheme that provides a safe harbor mechanism for tenants." Before we analyze de novo each statute to address whether it allows a retaliation defense to prevent an eviction in this case, we emphasize that eviction actions are intended to be summary proceedings to efficiently adjudicate only a single issue-the present right to evict and to recover possession of real property. Minn. Stat. § 504B.001, subd. 4 (2016). "Defendants may, however, raise defenses and counterclaims that fit within the limited scope of an eviction proceeding." Deutsche Bank Nat. Tr. Co. v. Hanson , 841 N.W.2d 161, 164 (Minn. App. 2014). The legislature has provided statutory defenses for specific circumstances, and these include the defense at issue here-the retaliation defense.
Retaliation Defense under Section 504B.285, Subdivision 2
Central Housing contends that the retaliatory-eviction defense was not available to Olson under section 504B.285 because the eviction action was premised on breach of the lease. We essentially answered this argument in Cloverdale Foods of Minn. v. Pioneer Snacks , 580 N.W.2d 46 (Minn. App. 1998), interpreting nearly identical language in an earlier version of the statute. Compare Minn. Stat. § 566.03 (1996), with Minn. Stat. § 504B.285 (2016). The question before us in Cloverdale was whether the retaliatory-eviction defense under Minnesota Statutes section 566.03, subdivision 2, "only applies when a tenancy is terminated by a notice to quit" or if it also could be asserted when a tenancy was "terminated based on a breach of the lease." Cloverdale , 580 N.W.2d at 51. We reasoned that subdivision 1 of the statute "expressly distinguishes between a tenancy that is terminated based on a breach of the lease and a tenancy that is terminated by a notice to quit." Id. We observed that the retaliatory-eviction defense, by its express terms, applies "to an action for recovery of premises following the alleged termination of a tenancy by notice to quit." Id. (quoting Minn. Stat. § 566.03, subd. 2 ). And we concluded that, because the landlord brought the eviction action under the breach-of-lease provision rather than the notice-to-quit provision, "the retaliatory eviction defense does not apply." Id.
Despite slight differences in the statutory language, the same reasoning applies here. The retaliation-defense provision of section 504B.285 states, "It is a defense to an action for recovery of premises following the alleged termination of a tenancy by notice to quit for the defendant to prove" that the landlord's termination effort arose from specified, improper retaliatory motives. Minn. Stat. § 504B.285, subd. 2. Central Housing brought its holdover eviction action under section 504B.285, subdivision 1(a)(2), which provides, "The person entitled to the premises may recover possession by eviction when ... any person holds over real property after termination of the time for which it is ... leased to that person ..., contrary to the conditions or covenants of the lease...." It did not bring the eviction action under a different holdover provision- section 504B.285, subdivision 1(a)(3) -which addresses the right to remove a "tenant at will" who is holding over after the landlord issued a "notice to quit" the tenancy. See *489 Minn. Stat. § 504B.285, subd. 1(a)(3). Nor could this be construed as an action to remove a tenant at will as the record does not suggest that Olson is such a tenant. Because the retaliatory-eviction defense applies only to a "termination of a tenancy [at will] by notice to quit," the defense does not apply to this action.
Olson argues that the term "notice to quit" includes a "notice to terminate." The argument disregards the practical and legal differences between removing a person who has occupancy rights under an ongoing tenancy at will and a person who has held over after his lease period has expired or who is being removed for otherwise breaching the terms of the lease. The answer we gave in Cloverdale defeats Olson's contention.
We add that reading the retaliation provision in subdivision 2 to apply to evictions based on termination for a breach of lease would disregard a common maxim in statutory construction. Whenever possible, we will not interpret a statute in a manner that fails "to give effect to all of its provisions" so as to render any "word, phrase, or sentence ... superfluous, void, or insignificant." See Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted). Construing the retaliation provision in subdivision 2 to apply to evictions based on breach of the lease would effectively nullify subdivision 4, which states, "Nothing contained in subdivisions 2 and 3 limits the right of the landlord pursuant to the provisions of subdivision 1 to terminate a tenancy for a violation by the tenant of a lawful, material provision of a lease or contract...."
We also reject Olson's contention that this court recognized retaliatory eviction as a defense outside the notice-to-quit context in Barnes v. Weis Mgmt. Co. , 347 N.W.2d 519 (Minn. App. 1984). Olson misreads Barnes . In Barnes , we answered the narrow question of whether, as a matter of law, the tenants' showing that their landlord evicted them in response to their "good faith attempt" to exercise their "right to rent premises regardless of their race" could prove "retaliatory purpose" as the term is used in the statute. Id. at 521-22. The nature of the tenancy in Barnes is not clear from the opinion, and the availability of the retaliatory-eviction defense in that context was not at issue. See id. at 520-22. Barnes identified discrimination as a valid legal theory to show retaliation (not an issue here), while Cloverdale clarified when a tenant may use the retaliatory-eviction defense under section 504B.285, subdivision 2 (the issue here).
Section 504B.285 's retaliatory-eviction defense applies when a tenancy is terminated by notice to quit, not when a tenancy is terminated based on a breach of lease. Because Central Housing's eviction action rests on breach of lease, Olson cannot defeat the eviction by relying on the retaliatory-eviction defense under section 504B.285.
Retaliation Defense under Section 504B.441
The district court's order also identified section 504B.441 as a basis for allowing the retaliatory-eviction defense to defeat Central Housing's eviction action. Under that section, a "residential tenant may not be evicted ... if the eviction ... is intended as a penalty for the residential tenant's ... complaint of a violation." Minn. Stat. § 504B.441 (2016). "Violation" is defined as
(1) a violation of any state, county or city health, safety, housing, building, fire prevention, or housing maintenance code applicable to the building;
(2) a violation of any of the covenants set forth in section 504B.161, subdivision 1, *490 clause (1) or (2), or in section 504B.171, subdivision 1; or
(3) a violation of an oral or written agreement, lease, or contract for the rental of a dwelling in a building.
Minn. Stat. § 504B.001, subd. 14 (2016).
Olson supports the district court's reliance on this section, arguing that, because he is a residential tenant who made a "complaint" of a violation related to his lease-specifically, Central Housing's allegedly discriminatory conduct-to the Minnesota Department of Human Rights, he can defeat Central Housing's eviction action by showing that the eviction was intended as a penalty for this complaint. Whether the retaliatory-eviction defense, which is not available under section 504B.285 in a breach-of-lease action, is available under section 504B.441, is a question of first impression. The answer is clear.
Although chapter 504B nowhere expressly defines "complaint," a statute's meaning is informed by its surrounding sections. Schroedl , 616 N.W.2d at 277. And the meaning of "complaint" as used in 504B.441 is obvious from the context of the statute as a whole. Beginning with section 504B.395 and ending 14 sections later in 504B.471, the statute provides the procedure and substance for tenant-remedy civil actions. The legislature begins by announcing the procedure, "An action may be brought in district court ...." Minn. Stat. § 504B.395, subd. 1 (2016) (emphasis added). Describing this action, the statute specifies that "the action must be started by service of a complaint and summons." Id ., subd. 5 (2016) (emphasis added). "The complaint must be verified and must" meet specified requirements. Id ., subd. 6 (2016). The next section explains that the court administrator must issue the landlord a summons after the administrator receives "the complaint." Minn. Stat. § 504B.401 (2016). Two sections later the statute presents the responses that a landlord may identify as defenses to a "complaint" filed under section 504B.395. Minn. Stat. § 504B.415 (2016). Another section allows the court to take certain action "if the court finds that the complaint in section 504B.395 has been proved." Minn. Stat. § 504B.425(a) (2016). It is in this context of a tenant's civil action for remedies, brought through the filing and service of a civil complaint in district court, that section 504B.441 appears and states, "A residential tenant may not be evicted ... if the eviction ... is intended as a penalty for the residential tenant's ... complaint of a violation. The burden of proving otherwise is on the landlord if the eviction ... occurs within 90 days after filing the complaint ." Minn. Stat. § 504B.441 (emphasis added).
Given this context, we have no difficulty rejecting Olson's argument that a "complaint" in section 504B.441 refers to something other than a civil complaint commencing a judicial proceeding. The term does not include a report to a state civil rights agency. Olson did not file a civil complaint against Central Housing within the meaning of the tenant-remedies provision of the statute.
We find further support for our conclusion that the term "complaint" in section 504B.441 does not include a complaint presented only to a governmental agency and not the court. When section 504B.285 describes the retaliation defense available to challenge eviction actions commenced by a notice to quit a tenancy at will, it includes retaliation for the tenant's reports to governmental agencies, but it does not use the term "complaint" to describe these reports. Instead, that section describes the report simply as a "report." It allows a tenant to prove retaliation by showing that the landlord terminated the tenancy in response *491 to the tenant's "good faith attempt to report to a governmental authority ... the plaintiff's violation of a health, safety, housing, or building code or ordinance." Minn. Stat. § 504B.285, subd. 2(2) (emphasis added). This corroborates our understanding that the legislature did not mean for "complaint" in section 504B.441 to include the kind of agency report Olson made.
Retaliation Defense under Common Law
Although the district court identified only sections 504B.285 and 504B.441 as the authority allowing Olson to rely on the retaliatory-eviction defense, Olson argues that the defense is also available to him under the common law. Olson acknowledges that a common-law retaliatory-eviction defense has never been recognized in Minnesota, but he urges us to recognize it because many other jurisdictions have. The argument is unpersuasive. A tenant once asked the supreme court to read into the eviction statute a retaliation defense. Olson v. Bowen , 291 Minn. 546, 547, 192 N.W.2d 188, 188 (1971). The court explained that it was "not constrained to consider defendants' basic contention that the defense of retaliatory eviction must be judicially engrafted upon the unlawful detainer statute. The ... statute has now been amended by the legislature itself ... creating a defense of retaliatory eviction in the situations stated therein ." Id. (emphasis added) (citations omitted). The same here; the legislature has provided for retaliatory-eviction defenses, as we have discussed, and it has established the contours of the defense and limited it to certain situations. These express provisions have displaced any common-law theories.
DECISION
The retaliatory-eviction defense described in sections 504B.285 and 504B.441 is available only in the statutorily defined circumstances outlined in those sections. Central Housing's breach-of-lease eviction action includes none of those circumstances. The jury's finding that Central Housing retaliated against Olson is therefore irrelevant to the eviction action. The district court should not have relied on that finding to deny Central Housing's demand for eviction after the jury found that Olson breached the lease. We reverse and remand for the district court to award possession of the leased premises to Central Housing.
Reversed and remanded.