LILLEHAUG, Justice.
We consider here whether a residential tenant has a statutory or common-law defense *401 if a landlord seeks to evict the tenant in retaliation for the tenant's complaint about the condition of the leased premises. We conclude that, in this case, the retaliation defense is not available under the relevant statute, Minn. Stat. § 504B.441 (2018). But we also conclude that the common law should recognize a defense when a landlord retaliates against a tenant for making a good-faith complaint to the landlord of a material violation of local or state law, residential covenants, or the lease. Therefore, we affirm in part and reverse in part.
FACTS
Central Housing Associates, LP (CHA) and Aaron Olson entered into a 1-year residential lease beginning May 1, 2016. Thereafter, Olson made several written complaints to CHA regarding maintenance issues and further alleged in writing that a member of CHA's staff had harassed and discriminated against his minor daughter.
On January 20, 2017, CHA gave Olson written notice that his lease would be terminated two months early, effective February 28, 2017. The notice alleged multiple breaches of the lease terms, including disruptive behaviors by members of Olson's household, failing to list all family members on Olson's application, an unpaid balance of $ 275.91, multiple late payments of rent, and false information on the application of Olson's live-in aide.
After Olson received the notice, but before the February 28 termination date, he filed a written report with the Minnesota Department of Human Rights. Olson alleged that CHA only began issuing lease infraction notices to him after he complained to CHA that its employee, a maintenance worker, had harassed his daughter. Olson also alleged that CHA had discriminated against him based on his disability and against his daughter based on her race and religion.
Olson did not vacate the property on February 28, and CHA brought an eviction action in district court. Olson appeared pro se, and the case was tried to a jury. By special verdict, the jury found that "Olson materially violated the terms of the lease" but that CHA "retaliated against [Olson] in whole or in part as a penalty for his good faith attempt to secure or enforce rights under the lease or the laws of the State of Minnesota or the United States."
According to the district court's post-trial order, CHA did not object to the retaliation-defense question being posed to the jury. Following trial, however, CHA moved for judgment as a matter of law on the ground that Olson's retaliation defense was not available as a matter of law. The district court denied CHA's motion, determining that CHA had waived the argument.[1] The district court entered judgment for possession of the rental unit in favor of Olson, apparently based on the existence of a retaliation defense under Minn. Stat. § 504B.285, subd. 2 (2018), and Minn. Stat. § 504B.441.
CHA appealed, and the court of appeals reversed, holding that no retaliation defense was available to Olson under either statutory provision. Cent. Hous. Assocs., LP v. Olson , 910 N.W.2d 485, 486-87 (Minn. App. 2018). The court of appeals held that "the defense in section 504B.441 does not apply unless the tenant has filed a tenant-remedies action in the district court." Id. The court of appeals also held that the "defense in section 504B.285 does not apply in an eviction action based on breach of lease." Id. at 486. Having ruled that no statutory defense was available, *402 the court declined to recognize a common-law defense of retaliation. Id. at 491. Olson appealed only the holdings regarding Minn. Stat. § 504B.441 and the common law, and we granted his petition for review.
ANALYSIS
I.
We begin with the question of whether Olson is entitled to assert a retaliation defense under Minn. Stat. § 504B.441 to CHA's breach-of-lease eviction action. We must interpret the statute, a question of law that we review de novo. Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016). The purpose "of all statutory interpretation is to ascertain and effectuate the intent of the Legislature." Hous. & Redevelopment Auth. of Duluth v. Lee , 852 N.W.2d 683, 687 (Minn. 2014) ; see also Minn. Stat. § 645.16 (2018). We will apply the plain meaning of a statutory provision "[i]f the Legislature's intent is clear from the unambiguous language of the statute." Staab v. Diocese of St. Cloud , 853 N.W.2d 713, 716-17 (Minn. 2014). Consistent with our canons of statutory interpretation, "we construe technical words and phrases 'according to [their] special meaning,' and other words and phrases according to their 'common and approved usage.' " Cocchiarella , 884 N.W.2d at 624 (alteration in original) (quoting Staab v. Diocese of St. Cloud , 813 N.W.2d 68, 72 (Minn. 2012) ); see also Minn. Stat. § 645.08(1) (2018).
To determine whether a statute's meaning is plain, we will interpret the statute "to give effect to all of its provisions" and to avoid conflicting interpretations. Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000). Accordingly, "it is sometimes necessary to analyze [a] provision in the context of surrounding sections." Id. at 278. Sometimes the operation of a statutory provision "only becomes clear when it is read in conjunction with the rest of" the legislative act of which it is a part. Id.
A statute is ambiguous if it "is susceptible to more than one reasonable interpretation." Staab , 853 N.W.2d at 717. When a statute is ambiguous we will consider canons of construction to ascertain the Legislature's intent. Id. at 718 ; Lietz v. N. States Power Co. , 718 N.W.2d 865, 870 (Minn. 2006). Some of these canons are set forth in Minn. Stat. § 645.16.
Before turning to section 504B.441, it is helpful to review the retaliation defenses codified by the Legislature. Section 504B.285, subdivision 2, makes a retaliation defense available "following the alleged termination of a tenancy by notice to quit " if the tenant, in good faith, has sought to secure or enforce the tenant's rights or if the tenant has made a good faith report to a government authority.[2] (Emphasis added). The court of appeals held that this defense was not available to Olson because CHA did not seek to evict him by notice to quit. Cent. Hous. Assocs. , 910 N.W.2d at 488-89. Olson did not appeal that determination, so it is not before us.
Another retaliation defense-the one at the heart of this appeal-is found in section 504B.441, which is titled "Residential Tenant May Not Be Penalized for Complaint." Section 504B.441 expressly applies to eviction actions. The statute is in two parts, the first part consisting of the first *403 sentence, and the second part consisting of the second and third sentences.
The first part of section 504B.441 states that "[a] residential tenant may not be evicted, nor may the residential tenant's obligations under a lease be increased or the services decreased, if the eviction or increase of obligations or decrease of services is intended as a penalty for the residential tenant's or housing-related neighborhood organization's complaint of a violation."
The second part of section 504B.441 constructs a 90-day window following the complaint during which the landlord bears the burden of proving the adverse action was not retaliatory unless the complaint was not made in good faith. Beyond 90 days, the residential tenant bears the burden to prove retaliation. As Olson correctly notes, this third sentence of Minn. Stat. § 504B.441 is not relevant here "because Olson shouldered and met the burden of proving that CHA's eviction was retaliatory ... [and] did not seek to shift the burden of proof to CHA."
A.
The statutory dispute in this case turns on the meaning of section 504B.441 's use of the phrase "complaint of a violation." There is no dispute about the meaning of the word "violation." The term is defined in chapter 504B as "(1) a violation of any state, county or city health, safety, housing, building, fire prevention, or housing maintenance code applicable to the building;" (2) a violation of covenants that the premises will be maintained in reasonable repair, are fit for their intended use, comply with health and safety laws, and that unlawful activity will not be permitted; "or (3) a violation of an oral or written agreement, lease, or contract for the rental of a dwelling in a building." Minn. Stat. § 504B.001, subd. 14 (2018). This definition applies to all of chapter 504B, including section 504B.441. See id. , subd. 1 (2018) ("For the purposes of this chapter, the terms defined in this section have the meanings given them.").
The meaning of the word "complaint," however, is hotly disputed. Olson contends that the word includes not only a legal complaint-a court pleading-in a tenant-remedies action under the statute, but also complaints, whether formal or informal, to government entities or to the landlord itself. Essentially, Olson argues that a complaint is an expression of dissatisfaction. CHA contends that the word refers only to the court pleading. To resolve these competing contentions, we must determine whether Minn. Stat. § 504B.441 is ambiguous.
Because the word "complaint" is not defined by the statute, we give it its plain and ordinary meaning. 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 290-91 (Minn. 2013). To ascertain the plain meaning of a word, "we often consult dictionary definitions." Wayzata Nissan, LLC v. Nissan N. Am., Inc. , 875 N.W.2d 279, 286 (Minn. 2016). The dictionary defines complaint as: (1) an "expression of grief, pain, or dissatisfaction," (2a) "something that is the cause or subject of protest or outcry," (2b) "a bodily ailment or disease," or (3) "a formal allegation against a party." Merriam-Webster's Collegiate Dictionary 234 (10th ed. 2001). The dictionary definitions suggest that section 504B.441 may be susceptible to more than one reasonable interpretation: "complaint" could mean a tenant's expression of dissatisfaction, or it could mean a tenant's formal allegation against a party.
Our inquiry does not stop at ordinary usage and dictionary definitions. Cocchiarella , 884 N.W.2d at 625. If a term "has a variety of meanings, we examine *404 the context in which the word appears." Id. ; see also Schroedl , 616 N.W.2d at 277 ("We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations.").
Section 504B.441 falls within the part of chapter 504B titled "Tenant Remedies Action," see Minn. Stat. §§ 504B.395 -.471 (2018) (collectively, Tenant Remedies statutes). Based on the context of the Tenant Remedies statutes and Minn. Stat. § 504B.285, the court of appeals reasoned that "complaint" as it is used in section 504B.441 only means a complaint in a civil tenant-remedies action. See Cent. Hous. Assocs., LP , 910 N.W.2d at 486-87, 490 (analyzing the meaning of "complaint" in section 504B.441 in "the context of the statute as a whole" and concluding that "the term ... does not include a complaint presented only to a governmental agency and not the court"). We disagree.[3]
It is true, as the court of appeals notes, that where the word "complaint" is used in other sections of the Tenant Remedies statutes, it refers to the formal commencement of a lawsuit. For instance, section 504B.395 sets forth the circumstances under which a tenant-remedies action may be brought, in what venue, and by whom. The word complaint as used in that section clearly means the formal commencement of a lawsuit. See Minn. Stat. § 504B.395, subd. 5 (stating that an "action must be started by service of a complaint and summons" and that the "summons may be issued only by a judge or court administrator"); id. , subd. 6(a) (stating that a "complaint" must "allege material facts" and "state the relief sought."). The next section of the statute, Minn. Stat. § 504B.401, sets forth the particulars relating to the summons issued following a complaint brought under the previous section. Each use of the word complaint within section 504B.401 also refers to the commencement of a lawsuit. Section 504B.415 also uses the word complaint in the sense of a formal proceeding and provides that "[i]t is a sufficient defense to a complaint under section 504B.385 [setting forth the procedure for rent-escrow actions to address violations] or 504B.395 that ... the violation or violations alleged in the complaint do not exist or that the violation or violations have been removed or remedied." Minn. Stat. § 504B.415(1). Finally, section 504B.425 sets forth how a court may proceed in entering judgment and provides that "[i]f the court finds that the complaint in section 504B.395 has been proved, it may, in its discretion, take" certain actions set forth in that section. Minn. Stat. § 504B.425(a). Again, complaint in this statute refers to the commencement of a lawsuit.
But there is one part of the statute where the word complaint does not clearly refer to the commencement of a lawsuit, *405 and that is the part at issue in this case, Minn. Stat. § 504B.441. It is entitled "Residential Tenant May Not Be Penalized for Complaint. " Id. (emphasis added). It states that "[a] residential tenant may not be evicted, nor may the residential tenant's obligations under a lease be increased or the services decreased, if the eviction or increase of obligations or decrease of services is intended as a penalty for the residential tenant's or housing-related neighborhood organization's complaint of a violation." Id. (emphasis added). It further provides that "[t]he burden of proving otherwise is on the landlord if the eviction or increase of obligations or decrease of services occurs within 90 days after filing the complaint , unless the court finds that the complaint was not made in good faith." Id. (emphasis added). In the context of section 504B.441, "complaint of a violation" can reasonably be read to mean that a landlord cannot penalize a tenant through eviction, an increase in obligations, or a decrease in services for the act of complaining or expressing dissatisfaction. Thus, even though "complaint" refers to formal pleadings commencing a lawsuit in other sections of the Tenant Remedies statutes, in section 504B.441 the Legislature did not plainly indicate whether the word is used in that formal legal sense or in the ordinary sense to mean an expression of dissatisfaction (or both).
Considering section 504B.441 in light of other surrounding provisions creates further uncertainty regarding the meaning of that section's use of the word "complaint." In particular, we consider section 504B.395, which sets forth the procedure for filing a tenant-remedies action and provides that a tenant who plans to file such an action must first inform the landlord "in writing of an alleged violation at least 14 days before an action is brought." Minn. Stat. § 504B.395, subd. 4. It further provides that, before filing a tenant-remedies action, a tenant must also contact "the appropriate state, county, or municipal department" to request an inspection. Id. , subd. 6(a)(2). In essence, a tenant is required to make a "complaint"-an expression of dissatisfaction-before the tenant can initiate an action with a formal "complaint."
Based on the words of section 504B.441 read in light of the Tenant Remedies statutes, we conclude that section 504B.441 's use of "complaint of a violation" is subject to more than one reasonable interpretation and is therefore ambiguous. CHA's interpretation that limits the phrase to a pleading in court is reasonable. But so is Olson's interpretation that includes a tenant's expression of dissatisfaction in a court filing or to a government entity or landlord.
Although both CHA's and Olson's interpretations of "complaint of a violation" are reasonable, we discern yet a third reasonable interpretation not advanced by either party. This third interpretation is in the nature of a middle ground between the parties' competing interpretations. The Legislature could have intended that a "complaint of a violation" means either a tenant's complaint commencing a lawsuit or a tenant's complaint to a government entity, but not a tenant's complaint to a landlord. In other words, the phrase could refer to an expression of dissatisfaction that has an official character to it. We conclude that this third interpretation is also reasonable.
B.
Having concluded that Minn. Stat. § 504B.441 is ambiguous, we may "consider sources in addition to the plain text to ascertain the Legislature's intent." Staab , 853 N.W.2d at 718. Where, as here, a provision is ambiguous, " 'it is appropriate to turn to the canons of statutory construction *406 to ascertain a statute's meaning.' " Id. (quoting State v. Leathers , 799 N.W.2d 606, 611 (Minn. 2011) ); see also Minn. Stat. § 645.16 (setting forth the canons of statutory construction).
After examining and applying the canons of construction, we are persuaded that the third interpretation is the most reasonable.
The first canon we apply is under Minn. Stat. § 645.16(6) : when a statute is ambiguous, we consider the consequences of an interpretation. Interpreting section 504B.441 to protect a residential tenant only after a complaint commencing a lawsuit has been filed would allow a landlord to retaliate against a tenant for taking the very steps the Legislature requires to file a tenant-remedies action. Specifically, section 504B.395 provides that a complaint must include "a statement that a request for inspection was made to the appropriate state, county, or municipal department, that demand was made on the landlord to correct the alleged code violation, and that a reasonable period of time has elapsed since the demand or request was made." Minn. Stat. § 504B.395, subd. 6(b)(2). If we interpreted "complaint of a violation" to mean only the commencement of a lawsuit, the Legislature would have given a landlord the legal right to retaliate against a residential tenant during the period of time after which a tenant requests an inspection but before "a reasonable period of time has elapsed." Id. We doubt that the Legislature sought to prohibit retaliation against a tenant for filing a lawsuit but to allow retaliation against a tenant for taking the steps necessary to file that same lawsuit.
Interpreting "complaint" to be limited to the formal court pleading of that name would also allow a landlord to retaliate against a tenant for taking the steps necessary to bring a rent-escrow action under section 504B.385, which, as discussed, does not even require a formal court pleading called a complaint. Such a consequence would contravene the plain meaning of the statute, which expressly provides that section 504B.441 applies to section 504B.385 proceedings. Minn. Stat. § 504B.385, subd. 11.
The second canon we apply is in pari materia , the related-statutes canon. Generally, statutes relating to the same subject matter or with a common purpose "should be construed together." Apple Valley Red-E-Mix, Inc. v. State by Dep't of Pub. Safety , 352 N.W.2d 402, 404 (Minn. 1984). As we already noted, section 504B.385, which applies to residential tenants who seek to address a violation in a residential building by depositing rent with a court administrator, incorporates section 504B.441. Both section 504B.385 and section 504B.441 provide remedies for tenants to address violations in residential housing. Accordingly, we construe them together.
Notably, the procedures outlined in section 504B.385, unlike the procedures for filing a tenant-remedies action outlined in section 504B.395, do not require a tenant to file a formal complaint to commence a lawsuit. Section 504B.385 sets out certain procedures for initiating a rent-escrow action that require a tenant to submit, along with the rent, either: (1) a copy of a notice of code violation or (2) a simplified affidavit. Minn. Stat. § 504B.385, subd. 1(b)-(c). Both subdivision 1(b) and 1(c) require a tenant to make a complaint of a violation in the sense of communicating an expression of dissatisfaction-either to the City under subdivision 1(b) or to the landlord under subdivision 1(c). Id. And, although section 504B.415(1) states that "[i]t is a sufficient defense to a complaint under section 504B.385 or 504B.395 that ... the violation or violations alleged in the complaint do not exist or that the violation or violations *407 have been removed or remedied," neither paragraph (b) or (c) of section 504B.385, subdivision 1 explicitly requires the filing of a complaint commencing a lawsuit. Yet, under subdivision 11 of section 504B.385, a residential tenant can assert the retaliation defense set forth in section 504B.441. In sum, construed together, section 504B.385 and section 504B.441 strongly suggest that the Legislature meant to penalize retaliation for a tenant's expression of dissatisfaction, rather than only for commencing a tenant-remedies action.
The third canon we apply is to consider the law that preceded the current version of the statute at issue. Minn. Stat. § 645.16(5). Enacted in 1973, the original Tenant Remedies Act[4] allowed the commencement of a tenant-remedies action to remedy an alleged violation, see Minn. Stat. § 566.20, subd. 1 (1974), but defined "violation" more narrowly to encompass only violations of state and local code, see Minn. Stat. § 566.18, subd. 6 (1974) (defining violation as "the violation of any state, county or city health, housing, building, fire prevention, or housing maintenance code applicable to the building which materially endangers the health or safety of the tenants of the building involved"). The original Tenant Remedies Act set forth the procedure by which a tenant could demand an inspection from a local authority and provided that "[a]fter an inspection of a building has been made upon demand by a tenant, the owner or his agent and the complaining tenant shall be informed in writing by the inspector of any violations discovered and a reasonable period of time shall be allowed in which to correct such violations." Minn. Stat. § 566.19, subd. 2 (1974) (emphasis added). Significantly, the phrase "complaining tenant" unequivocally referred to a tenant's expression of dissatisfaction to a local housing inspector regarding a violation of state or local code. It did not refer to the commencement of a formal legal action or to an expression of dissatisfaction to the landlord.
Minnesota Statutes § 566.28 (1974), now codified at section 504B.441, set forth the retaliation defense using language closely mirroring the language of the current statute. It provided that, "[a] tenant may not be evicted, nor may his obligations under his rental agreement be increased nor the services decreased, if the eviction or increase of obligations or decrease of services is intended as a penalty for the tenant's complaint of a violation." Id. (emphasis added). In sum, Minn. Stat. § 566.19 set forth the procedure by which a tenant could complain of a violation, and Minn. Stat. § 566.28 prohibited a landlord from retaliating against a tenant for complaint of a violation. Further, it was not possible for a tenant to initiate a tenant-remedies action without first complaining of a violation to a housing inspector. Minn. Stat. § 566.20, subd. 4(d)-(e) (1974). The clear intent of these predecessor statutes thus strongly supports a reading of section 504B.441 that prohibits retaliation against a tenant, not just for commencing a formal tenant-remedies action, but for complaining to a housing inspector.
On the other hand, the language of Minn. Stat. § 504B.441 does not support a reading that would prohibit retaliation against a tenant for complaining directly to the landlord. As discussed above, the first sentence in the statute prohibits retaliation for "complaint of a violation." Minn. Stat. § 504B.441. The second sentence states that the burden of proving that an adverse action was not retaliatory "is on the landlord if the eviction or increase of obligations or decrease of services occurs *408 within 90 days after filing the complaint , unless the court finds that the complaint was not made in good faith." Id. (emphasis added). The verb "file" means: (1) "to arrange in order for preservation and reference," (2a) "to place among official records as prescribed by law," (2b) "to send (copy) to a newspaper," (2c) "to return to the office of the clerk of a court without action on the merits[;]" and (3) "to initiate (as a legal action) through proper formal procedure." See Merriam-Webster's Collegiate Dictionary , supra , at 434. A tenant might "file" a complaint to initiate a formal lawsuit. Likewise, a tenant might "file" a complaint with a government entity. "File" connotes something formal and official. In that ordinary sense of the word, one does not file a complaint with a landlord.
After considering the relevant canons of construction,[5] we conclude that Minn. Stat. § 504B.441 prohibits retaliation for a residential tenant's complaint of a violation to a government entity, such as a housing inspector, or commencement of a formal legal proceeding. But it does not provide a defense to retaliation based on an expression of dissatisfaction to the landlord.
Applying the most reasonable interpretation to the facts of this case, Olson did not have a defense of retaliation under section 504B.441. Nothing in the record shows that Olson ever filed a complaint with a housing inspector. He did make a report to the Minnesota Department of Human Rights, but only after he had been served with the eviction notice. As a matter of law, CHA's eviction action could not have been in retaliation for a "complaint of a violation" within the meaning of section 504B.441. Accordingly, we agree with the court of appeals that Olson could not assert that statutory defense, but we reach that conclusion based on different reasoning.
II.
We turn next to the question whether Olson may assert a common-law retaliation defense to a residential breach-of-lease eviction action. Under the principle of judicial restraint, we are generally reluctant to recognize a new common-law right or remedy. See Dukowitz v. Hannon Sec. Servs. , 841 N.W.2d 147, 151 (Minn. 2014) (acknowledging that deciding questions of public policy is a role " 'usually better performed by the legislature' " (quoting Nelson v. Productive Alts., Inc. , 715 N.W.2d 452, 457 n.5 (Minn. 2006) )). But we have recognized or extended rights or remedies when there is a compelling reason to do so. See, e.g. , Phipps v. Clark Oil & Ref. Corp. , 408 N.W.2d 569, 572-73 (Minn. 1987) (recognizing a public-policy exception to Minnesota's employment-at-will rule).
*409 There is nothing in Minnesota Statutes chapter 504B whereby the Legislature constrained the judiciary from exercising our responsibility to develop the common law of landlord-tenant relationships. To the contrary, the Legislature clearly let us know that the Tenant Remedies statutes are intended only to supplement the common law. Minnesota Statutes § 504B.471 provides that "[t]he purpose of section 504B.381 and sections 504B.395 to 504B.471 is to provide additional remedies." (Emphasis added).
In that spirit, we exercise our responsibility to develop the common law. We hold that, in this case and going forward, tenants have a common-law defense to landlord evictions in retaliation for tenant complaints about material violations by the landlord of state or local law, residential covenants, or the lease. The tenant has the burden to assert the defense and to prove it by a preponderance of the evidence.
There is a compelling reason to recognize this defense: the protection of the health, safety, and welfare of tenants and their families. See City of Golden Valley v. Wiebesick , 899 N.W.2d 152, 166-67 (Minn. 2017) ; Zeman v. City of Minneapolis , 552 N.W.2d 548, 554 (Minn. 1996). As we noted in Wiebesick , hundreds of thousands of rental units exist in the metropolitan area alone. 899 N.W.2d at 167 n.15. We emphasized that the public "has a strong interest in preventing dangerous conditions from developing, even unknown or unintentionally, that would be hazardous to the tenants, their neighbors, and the citizens ... as a whole." Id. at 167. Evictions of tenants-some resulting in homelessness-based on their complaints about habitability are inimical to public health, safety, and welfare.
Recognizing a common-law defense of retaliation also encourages tenants and landlords to resolve their disputes directly, before either side resorts to court. Knowing that they are protected from retaliation, tenants will have an incentive to complain directly to landlords to address alleged violations, rather than first involving governmental entities or the courts.[6]
Finally, our recognition of a common-law retaliation defense furthers justice. A lease is not a one-way street that entitles only the landlord to the aid of the law. The tenant, too, is entitled to rely on the lease, residential covenants, city codes, and state laws. A tenant's good-faith complaint that the landlord has materially violated the law or lease should not lead to homelessness for the tenant and the tenant's family.
The common-law defense that we recognize today should not prevent law-abiding landlords from evicting tenants for material breaches of leases. Like most Minnesotans, most landlords care about obeying the law, and we suspect that most of them already assume that tenants may not be evicted for making complaints in good faith. Reasonable landlords seek the help of the judiciary to evict tenants only as a last resort. But, when an eviction action is in retaliation for a good-faith complaint that the landlord has materially violated the law or lease, the landlord should not expect the judiciary to assist.
A common-law defense fills a gap that the Legislature left open, perhaps inadvertently. In 1978, five years after the Tenant *410 Remedies Act was passed, the Legislature changed the definition of "violation" to include not just violations of the housing code and covenants of habitability but violations of the lease. Compare Minn. Stat. § 566.18 (1976) (defining "violation" as a violation of state or local law), with Minn. Stat. § 566.18 (1978) (defining "violation" as a violation of state or local law, statutory covenants, or the lease). Having broadened the definition to include contract disputes between landlord and tenant, it would have made sense for the Legislature to broaden the meaning of the word "complaint"-in the phrase "complaint of a violation"-to encompass tenant expressions of dissatisfaction to landlords regarding material violations of the lease. If our analysis is incorrect, of course, the Legislature is free to amend the statute to narrow the common-law defense that we recognize today.
In this case, the jury found that "Olson prove[d] by a fair preponderance of the evidence that Central Housing Associates, LP retaliated against [Olson] in whole or in part as a penalty for his good faith attempt to secure or enforce rights under the lease or the laws of the State of Minnesota or the United States." We have carefully reviewed the evidence before the jury. Although the jury did not make specific findings as to precisely what lease terms or laws were violated, sufficient evidence supported the jury's verdict. The language of the verdict was adequate to satisfy the requirements of the common-law retaliation defense that we recognize today. Olson asserted a retaliation defense based on his complaints to the landlord regarding alleged racial and religious discrimination against his daughter and maintenance issues, and he proved by a fair preponderance of the evidence that CHA's eviction was in retaliation for his good-faith attempt to secure his rights under the lease or the law.
The district court's order for judgment in favor of Olson is therefore reinstated.
CONCLUSION
For the foregoing reasons, we affirm the court of appeals' decision holding that Olson could not assert a statutory defense, but we reverse the court of appeals' decision on the issue of a retaliation defense at common law.
Affirmed in part, reversed in part.
Dissenting, Gildea, C.J., Anderson, J.

Olson does not argue on appeal that CHA has waived or forfeited the argument that the retaliation defense is not available as a matter of law.

Subdivision 3 also sets forth a defense not before the court of appeals or this court. See Minn. Stat. § 504B.285, subd. 3 (2018).

Although not necessary to resolve this case, we observe that the conclusion of the court of appeals that "the defense in section 504B.441 does not apply unless the tenant has filed a tenant-remedies action," id. at 486-87, cannot be correct because it conflicts with the plain language of Minn. Stat. § 504B.385 (2018). Section 504B.385, subdivision 1, provides that "[i]f a violation exists in a residential building, a residential tenant may deposit the amount of rent due to the landlord with the court administrator" by following the procedures set forth in the statute. Section 504B.385, subdivision 11, provides that "Section 504B.441 applies to proceedings under this section. The residential tenant rights under this section ... are in addition to and do not limit other rights or remedies which may be available to the residential tenant and landlord." (Emphasis added). Thus, at a minimum, the retaliation defense set forth in section 504B.441 is available to a tenant who files a rent-escrow action under section 504B.385 to remedy a violation, and not only to a tenant who files a tenant-remedies action under section 504B.395.

See Act of May 23, 1973, ch. 611, §§ 13-28, 1973 Minn. Laws 1426, 1432-39 (codified as amended at scattered sections of Minn. Stat. ch. 566 (1974)).

The dissent's argument that "complaint" means only a formal legal document because Minn. Stat. § 504B.285 uses a different word, "report," is inconsistent with the dissent's position that section 504B.441 is unambiguous. See Minn. Stat. § 504B.285, subd. 2(2). The retaliation defense under section 504B.285, subdivision 2, was enacted in 1971, and was not part of the Tenant Remedies statutes. See Act of May 10, 1971, ch. 240, § 1, 1971 Minn. Laws 445, 445-46 (codified at Minn. Stat. § 566.03 (1971) ). Section 504B.441 was enacted in its original form in 1973. See Act of May 23, 1973, ch. 611, § 23, 1973 Minn. Laws 1426, 1437 (codified at Minn. Stat. § 566.28 (1974) ).
Thus, the dissent's argument relies on in pari materia , the related-statutes canon, which is used only to construe ambiguous statutes. State v. Thonesavanh , 904 N.W.2d 432, 437 (Minn. 2017). Further, if section 504B.285 is relevant, it cuts the other way: the Legislature wanted to prohibit retaliation based on complaints to government authorities.

Indeed, under section 504B.395, a tenant must complain to the landlord directly before he or she can initiate a tenant-remedies action. See Minn. Stat. § 504B.395, subd. 4 ("A landlord must be informed in writing of an alleged violation at least 14 days before an action is brought by: (1) a residential tenant ... or ... (2) a housing-related neighborhood organization.").